**In re Lupe R. BROWN, Debtor.**

**No. GL 02–11640.**

United States Bankruptcy Court, W.D. Michigan.

June 4, 2003.

Michael W. Puerner, Esq., Lansing, Michigan, Chapter 7 Trustee.

Lupe R. Brown, Oak Ridge, TN, in pro per.

---

*OPINION REGARDING DEBTOR'S MOTION TO CONVERT CHAPTER 7 CASE TO CHAPTER 13*

JAMES D. GREGG, Chief Judge.

### I.  ISSUE

Does section 706(a) of the Bankruptcy Code give a chapter 7 debtor an absolute right to convert his or her case to chapter 13?

### II.  JURISDICTION

The court has jurisdiction over this bankruptcy case. 28 U.S.C. § 1334. The bankruptcy case and all related proceedings have been referred to this court for decision. 28 U.S.C. § 157(a) and L.R. 83.2(a) (W.D.Mich.). This matter is a core proceeding because it concerns the administration of the bankruptcy estate. 28 U.S.C. § 157(b)(2)(A). This opinion constitutes the court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

### III.  FACTS AND PROCEDURAL BACKGROUND

On October 17, 2002, the Debtor, Lupe R. Brown (hereinafter "Debtor"), filed his petition for relief under chapter 7 of the Bankruptcy Code.[1] Dkt. No. 1. Michael W. Puerner was appointed as chapter 7 trustee (hereinafter "Trustee").

On November 8, 2002, the Debtor filed his schedules and Statement of Financial Affairs with this court. Dkt. No. 13. Schedule A listed the Debtor's residence, located at 2161 Seminole Drive, Okemos, Michigan (hereinafter "the Okemos property"), as the Debtor's primary asset. On his schedules, the Debtor approximated the value of the Okemos property to be $95,400.[2] On Schedule I, the Debtor re-

---

**1.** The Debtor filed his chapter 7 petition without the assistance of counsel and has represented himself throughout his bankruptcy case.

As originally filed, the Debtor's petition was missing several important documents, including Schedules A–J, the Statement of Financial Affairs and the Creditor Matrix. Dkt. No. 3. Upon filing his petition, the Debtor applied to pay his filing fee in installments and his request was granted. Dkt. No. 2.

**2.** A note on Schedule A indicates that the Debtor arrived at this value by doubling the State Equalized Value, $55,200, and then subtracting $15,000 for the home's leaky basement, location in a flood zone, and other necessary repairs.

ported having no monthly income.[3]

The Debtor's first Section 341 meeting was scheduled for November 22, 2002. Dkt. No. 6. The Debtor failed to appear on that date. Dkt. No. 39. When the meeting was subsequently rescheduled for December 20, 2002, the Debtor again failed to appear. Dkt. Nos. 18 & 40.

On January 24, 2003, the United States Trustee filed his Motion for an Ex Parte Order Directing the Debtor to Attend Rescheduled 341 Meeting of Creditors, Show Cause Hearing, and Other Relief. Dkt. No. 46. In his motion, the U.S. Trustee requested that this court enter an order directing the Debtor to appear at the rescheduled 341 meeting on February 21, 2003, and requiring the debtor to appear before the court to show cause why he failed to attend the prior 341 meetings. The court entered the requested order on January 28, 2003.[4] Dkt. No. 48. On February 21, 2003, the Debtor appeared at the scheduled 341 meeting, but refused to testify without the assistance of counsel.[5]

During the same time period, on January 27, 2003, the Trustee filed a Motion to Compel Debtor to Grant Access to Real Estate Located at 2161 Seminole Drive, Okemos, Michigan. Dkt. No. 47. The motion alleged that, despite several attempts by the Trustee's office and the court-appointed realtor,[6] the Debtor had refused to grant access to the Okemos property.

Consequently, this court entered an order compelling the Debtor to grant the Trustee and his realtor access to the Okemos property on February 20, 2003. Dkt. No. 57.

On March 14, 2003, the court entered an Order to Show Cause Why Case Should Not be Dismissed for Failure to Pay Filing Fee. Dkt. No. 61. The Debtor paid the filing fee prior to the April 29, 2003 show cause hearing, and the show cause order was eventually withdrawn by the court. Dkt. No. 76.

On March 18, 2003, this court held a hearing to consider the U.S. Trustee's request for a possible order to show cause regarding the Debtor's failure to attend the scheduled 341 meetings. The Debtor appeared at the hearing and accepted the court's offer for additional time to comply with the court's order to grant the Trustee access to the Okemos property, fulfill his obligation to appear and testify at a 341 meeting, and to hire an attorney. Transcript of March 18, 2003 Hearing at 7 (hereinafter "Tr. at ___"). The court explained the Debtor's obligation to attend the 341 meeting and cooperate with the Trustee in answering questions. Tr. at 13. The court also reiterated the Debtor's obligation to allow the Trustee access to the Okemos property. Tr. at 11. The Debtor indicated that he understood these requirements. Tr. at 12–13. The court

---

**3.** A note at the bottom of Schedule I suggests that the Debtor's monthly income will increase to $1,500 as soon as current vacancies at his rental properties are filled. Also, at the May 28, 2003, hearing on the Debtor's Motion to Convert, the Debtor stated that he had started a construction business and presented a contract for $4,500 in support of his assertion.

**4.** The Debtor filed an objection to the U.S. Trustee's motion on February 11, 2003, several days *after* the court's order was entered. Dkt. No. 53. The objection was not timely

and stated no relevant defenses to the U.S. Trustee's motion.

**5.** The Debtor filed a Motion for Extension and Temporary Relief to Hire Legal Counsel on February 11, 2003. Dkt. No. 52. To this court's knowledge, however, the Debtor never retained an attorney.

**6.** The court granted the Trustee's Application to Employ Real Estate Agent, Mike Parsley, for the purpose of selling the Okemos property on December 19, 2002. Dkt. No. 31.

warned that failure to comply with these duties could result in the Debtor being held in contempt or in the loss of the Debtor's chapter 7 discharge. Tr. at 13 & 15. As contemplated by the parties, on March 20, 2003, this court entered an order adjourning the show cause hearing and requiring the Debtor to attend and testify at the 341 meeting on March 21, 2003 and to grant the Trustee access to the Okemos property. Dkt. No. 62.

The Debtor appeared and testified at the 341 meeting on March 21, 2003, but apparently did not heed the court's order to grant the Trustee access to the Okemos property. Instead, on March 26, 2003, the Debtor filed a Motion to Prevent the Sale of Real Estate. Dkt. No. 65. The court denied the Debtor's motion in an order entered on April 2, 2003. Dkt. No. 68.

On April 7, 2003, the Trustee filed his Motion to Approve Sale of Real Estate Located at 2161 Seminole Drive, Okemos, Michigan (hereinafter "the Trustee's Sale Motion"). Dkt. No. 69. According to the Trustee's Sale. Motion, the Trustee had received an offer to purchase the Okemos property for $136,500. The offer was contingent upon the purchaser being allowed to inspect the Okemos property prior to closing.

Despite repeated court orders and warnings, the Debtor allegedly continued to refuse to grant the Trustee access to the Okemos property. The Debtor's actions eventually prompted the Trustee to file a Motion for Contempt and Sanctions against the Debtor (hereinafter "the Trust-

ee's Contempt Motion") on April 28, 2003. Dkt. No. 73. The Trustee's Contempt Motion details five occasions between March 19 and April 24, 2003, on which the Trustee's realtor had scheduled appointments [7] to view the Okemos property. The Debtor provided the Trustee's realtor access to the Okemos property on only one of these occasions.[8]

At a hearing held on May 8, 2003, the court granted the Trustee's Sale Motion. Due to the Debtor's failure to permit the purchaser's inspection of the Okemos property, the ultimate purchase price was reduced to $131,500. The court entered an order approving the sale on May 27, 2003. Dkt. No. 82.

On May 12, 2003, the Debtor filed his request to convert his chapter 7 case to chapter 13. Dkt. No. 77. The Trustee filed a response to the Debtor's motion to convert on May 22, 2003. Dkt. No. 81. The Trustee's response alleged that the Debtor was ineligible for chapter 13 relief due to his lack of "regular income" and that the Debtor's request had been filed in bad faith. A hearing on the Debtor's motion to convert was held before this court on May 28, 2003. Although both the Debtor and the Trustee presented comprehensive argument at the hearing, neither party offered formal testimony. The foregoing factual findings have thus been gleaned from a thorough review of the court's file.[9] At the conclusion of the hearing, the court took the matter under advisement pending this written opinion.

7. Four of these appointments were made directly with the Debtor; one additional appointment was made with "Paul," an apparent occupant of the Okemos property.

8. The hearing on the Trustee's Contempt Motion has not yet been held. However, the allegations set forth in the Trustee's Contempt Motion are consistent with testimony given by the Trustee's realtor, Mike Parsley, at the

hearing on the Trustee's Sale Motion on May 8, 2003.

9. The court may take judicial notice of its own files. FED. R. EVID. 201. *See Alofs Mfg. Co. v. Toyota Mfg., Kentucky, Inc. (Matter of Alofs Mfg. Co.)*, 209 B.R. 83, 96 (Bankr. W.D.Mich.1997).

## IV. DISCUSSION

Section 706(a) of the Bankruptcy Code states:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a). Courts interpreting this statutory subsection have developed and implemented two distinct approaches. Some courts hold that a debtor's conversion rights under § 706(a) are *"absolute"* so long as the debtor's case has not previously been converted.[10] *See Matter of Martin,* 87 B.R. 20 (E.D.La.1988), *aff'd* 880 F.2d 857 (5th Cir.1989) (characterizing the debtor's right to convert as "unfettered" and explaining that "[t]he Court has no discretion to deny the debtor's right to conversion"); *In re Gibbons,* 280 B.R. 833 (Bankr.N.D.Ohio 2002) (stating that the debtor's right to convert under § 706(a) is "automatic"); *In re Widdicombe,* 269 B.R.

803 ·(Bankr.W.D.Ark.2001). In reaching their conclusion, these courts rely heavily on what they deem the "plain language" of the statute, particularly the words "may" and "at any time." They also frequently cite the statute's legislative history in support of their conclusion.[11]

Other courts have refused to apply § 706(a) in such a restrictive and rigid manner. *See, e.g., In re Ponzini,* 277 B.R. 399 (Bankr.E.D.Ark.2002); *In re Pakuris,* 262 B.R. 330 (Bankr.E.D.Pa.2001); *In re Thornton,* 203 B.R. 648 (Bankr.S.D.Ohio 1996). These courts acknowledge that a debtor's request to convert his or her chapter 7 case to a case under chapter 11 or 13 should be granted in all but the most egregious circumstances. *See In re Ponzini,* 277 B.R. at 406 (" '[t]he Court's power to deny conversion in any case should be exercised sparingly' ") (quoting *In re Young,* 269 B.R. 816, 828–29 (Bankr. W.D.Mo.2001)). Still, these courts have found that the bankruptcy court can (and should) review the facts of a particular

---

**10.** Section 706(d) imposes one additional restraint on the debtor's conversion rights. That subsection provides:

> Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

11 U.S.C. § 706(d). As the Debtor has failed to demonstrate that he is an "individual with regular income," *see* 11 U.S.C. § 109(e), the Debtor's eligibility for chapter 13 relief is highly problematic. However, given the court's findings regarding the Debtor's lack of good faith, the court need not rule on the eligibility issue.

**11.** The relevant legislative history states:

> Subsection (a) of this section gives the debtor the one-time *absolute* right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already once been converted from Chapter 11 or 13 to Chapter 7, then the debtor does not have that right. The policy

of the provision is that the debtor should always be given the opportunity to repay his debts . . . .

S. Rep. No. 95–989, at 94 (1978), *reprinted in* 1978 U.S.C.A.A.N. 5787, 5880 (emphasis added). *See also* H.R. Rep. No. 95–595, at 380 (1977), *reprinted in* 1978 U.S.C.A.A.N. 5963, 6336. With regard to this legislative history, at least one court has noted that:

> [T]he legislative committee's choice of 'absolute' in regard to Section 706(a) is infelicitous to say the least and has spawned an interpretation of the statute couched in hyperbolic terms very much at odds with the equitable considerations of eligibility, good faith and appropriateness which are inherent in a court's review of the facts and circumstances in any request brought on by motion.

*In re Marcakis,* 254 B.R. 77, 79 (Bankr. E.D.N.Y.2000) (holding that a debtor's right to convert his or her chapter 7 case is not absolute).

case when considering whether the debtor's motion to convert under § 706(a) should be granted. *See In re Pakuris,* 262 B.R. at 335 ("We hold that a review of the facts of the particular case is appropriate when considering an objection to a § 706(a) motion."). If, upon its review of the facts, the bankruptcy court finds that the debtor's request for conversion was made in bad faith or represents an attempt to abuse the bankruptcy process, the court may deny the requested conversion. *See Kuntz v. Shambam (In re Kuntz),* 233 B.R. 580, 585 (1st Cir. BAP 1999) (a chapter 7 debtor's right to convert may be denied in " 'extreme circumstances' constituting bad faith"); *In re Thornton,* 203 B.R. at 652 ("[T]his court agrees with the courts which have held that a debtor may be prevented from converting when sufficient evidence exists of the debtor's lack of good faith.").

Many of the courts that so hold base their conclusion on the language of § 706(a), particularly when read in context with other provisions in the Bankruptcy Code and Rules. These courts note that § 706(a) provides that the debtor "may" convert a case at any time. According to these courts, the use of the word "may" instead of "shall" suggests that the right to convert is "presumptive rather than absolute." *See In re Ponzini,* 277 B.R. at 404; *In re Marcakis,* 254 B.R. at 82 ("The statutory language clearly states that the Debtor may convert his case, but does not state that he or the Court 'shall' honor his request."). The courts further explain that the statutory phrase "at any time" does not necessarily mean "under any circumstances." *See In re Ponzini,* 277 B.R. at 404. Several courts have also pointed to Federal Rules of Bankruptcy Procedure 1017(2), 9013, and 2002(a)(4), which collectively require the filing of a motion to convert, notice, and a hearing, as support for the conclusion that the debtor's conver-

sion rights under § 706(a) are not absolute. *See, e.g., Id.* at 405.

The Sixth Circuit Court of Appeals has not addressed this particular issue. However, in a situation that is somewhat analogous, the Sixth Circuit recently held that the bankruptcy court may *dismiss* a debtor's chapter 13 petition if the court finds that the petition was not filed in good faith. *Alt v. United States (In re Alt),* 305 F.3d 413 (6th Cir.2002). In *Alt,* the debtor had given answers at a deposition that the bankruptcy court described as "laughable at best, fraudulent and criminal at worst" and had failed to schedule a $305,086 tax debt to the IRS on her chapter 13 petition. The Sixth Circuit affirmed the bankruptcy court's dismissal of the chapter 13 case, finding that the debtor's bad faith constituted sufficient "cause" for dismissal under § 1307(c).

Expounding on the good faith standard, the Sixth Circuit explained that, as it is applied in the plan confirmation context, " '[o]ur circuit's good faith test requires consideration of the totality of circumstances.' " *Id.* at 419 (quoting *Society Nat'l Bank v. Barrett (In re Barrett),* 964 F.2d 588, 591 (6th Cir.1992)). The court further stated that "[w]hether the debtor has been forthcoming with the bankruptcy court and the creditors is properly considered in deciding whether dismissal for lack of good faith is appropriate." *Id.* at 421.

■ If a chapter 13 petition may be dismissed for lack of good faith, it is logical to conclude that conversion from chapter 7 to chapter 13 may also be denied in the absence of good faith. *See In re Pakuris,* 262 B.R. at 335 (noting that the Third Circuit Court of Appeals has held that chapter 13 petitions must be filed in good faith and reasoning that "[i]t follows that conversion to a chapter 13 case must likewise be sought in good faith"). The Debt-

or's actions in this case present sufficient indicia of bad faith and abuses of the bankruptcy process to justify denial of his motion to convert.

Since seeking bankruptcy protection, the Debtor has made almost constant attempts to avoid the consequences of chapter 7 bankruptcy—namely, the sale of the Okemos property. The Debtor has significantly undervalued the Okemos property on his bankruptcy schedules; he had repeatedly failed to appear and testify at the required § 341 meetings (eventually doing so only in the shadow of threatened contempt proceedings); and he has failed to timely pay his filing fee. When these tactics failed, and as the sale of the Okemos property became more imminent, the Debtor consistently refused to grant the Trustee, his realtor, and the prospective purchaser access to the Okemos property. These refusals continued notwithstanding court orders to the contrary. The court finds that the Debtor's motion to convert is simply the Debtor's latest attempt to manipulate the bankruptcy process and prevent the sale of the Okemos property.

■ Section 706(a) provides honest debtors with an one-time absolute right to convert their chapter 7 case to chapter 11 or 13 so that they may have the opportunity to pay off their debts. The "absolute" nature of the conversion right does not extend, however, to situations where conversion is sought as a means of thwarting the chapter 7 trustee's attempts to administer the bankruptcy estate or of escaping unintended consequences of a chapter 7 petition. In such circumstances, as here, the Debtor's motion to convert may be denied for lack of good faith.

### V. CONCLUSION

For the foregoing reasons, the Debtor's motion to convert his chapter 7 case to chapter 13 is denied. The Trustee shall continue to administer the Debtor's chapter 7 estate. A separate order shall be entered accordingly.