**In re Natasha Marie WAMPLER, Debtor.**

No. 03–4112–JKC–7.

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

Aug. 25, 2003.

---

David G. Walton, Jr., Walton Legal Services, Indianapolis, IN, for Debtor.

Richard L. Darst, Indianapolis, IN, for Trustee.

### ORDER DENYING DEBTOR'S MOTION TO CONVERT TO CHAPTER 13 AND GRANTING TRUSTEE'S MOTION FOR TURNOVER

JAMES K. COACHYS, Bankruptcy Judge.

This matter comes before the Court on Debtor Natasha Marie Wampler's Motion

to Convert to which Richard L. Darst, Jr., Chapter 7 Trustee (the "Trustee"), objected. Following a hearing on June 30, 2003, the Court took the matter under advisement and now issues the following order.

## Facts and Procedural History

The Debtor commenced a voluntary case under Chapter 7 of the United States Bankruptcy Code on March 13, 2003. On Schedule B of her petition, the Debtor indicated that she had a claim, valued at $0.00, in a class action lawsuit against Rent–a–Center.[1] At her first meeting of creditors, conducted April 18, 2003, the Debtor first indicated that the recovery from the class action could be as high as $10,000. However, she and her attorney ultimately represented that they were actually not expecting a significant award. In any event, the Trustee instructed the Debtor to inform him if she recovered an amount from the lawsuit in excess of $3,000.

Subsequently, the Trustee filed a Report of No Distribution and Statement of Abandonment of Property, wherein he stated that the "there appears to be no assets in the estate over and above the valid and perfected liens of creditors and exemptions of debtor." The Court entered its Order in No Asset Case on May 25, 2003. In the meantime, on or about April 28, 2003, the Debtor received a check in the amount of $15,265.42 from the class action lawsuit (the "Recovery"). In a letter to the Trustee dated May 12, 2002, counsel for the Debtor informed the Trustee of the Recovery and asked that he consider certain factors—that the Debtor is a single mother who does not receive child support, that she was unemployed for a period of time and now only nets $306.00 per week–in

deciding whether to pursue the Recovery for distribution to the Debtor's creditors.

Notwithstanding this plea, the Trustee instructed counsel for the Debtor to turnover the Recovery. Instead, the Debtor moved to convert her case to one under Chapter 13 of the Code (the "Conversion Motion") on June 4, 2003. On June 5, 2003, the Trustee moved for turnover of the Recovery and also objected to the Conversion Motion (the "Objection"), arguing that the Debtor should not be allowed to convert her case because she misrepresented the value of the class action claim, did not promptly inform the Trustee of her Recovery and failed to turn over the Recovery as requested. In response, the Debtor has asserted that her right to convert is absolute under § 706(a) of the Code.

On June 11, the Court ordered Debtor's counsel to deposit the Recovery into his trust account pending further proceedings. On June 16, 2003, counsel filed his Notice of Compliance with this Order, stating that while he deposited $4,500.00 in his trust account, the Debtor had purchased a Certificate of Deposit in the sum of $10,000.00 with some of the Recovery proceeds. Counsel currently holds the Certificate in his possession. Counsel did not specify where the remaining balance of $765.42 is located. The Court also notes that the Debtor received her discharge on June 19, 2003.

## Discussion and Decision

Section 706(a) provides that a "debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1397 of this title." Courts interpreting

---

1. The exact nature of this lawsuit is not known, but given that the Equal Employment Opportunity Commission is involved, the Court assumes that it relates to some form of workplace discrimination or harassment.

this provision have taken two very distinct approaches. Some courts, relying on the "plain language of § 706(a) and its legislative history,[2] have concluded that a debtor has a one-time, 'absolute' right to convert." *See e.g., In re Mosby,* 244 B.R. 79, 83–84 (Bankr.E.D.Va.2000); *In re Kleber,* 81 B.R. 726, 727 (Bankr.N.D.Ga.1987); *In re Jennings,* 31 B.R. 378, 380 (Bankr. S.D.Ohio 1983).[3]

An increasing number of courts, however, have rejected this interpretation and have instead concluded that bankruptcy courts have the discretion to deny a motion to convert brought under § 706(a). *See e.g., In re Brown,* 293 B.R. 865, 870 (Bankr.W.D.Mich.2003); *In re Ponzini,* 277 B.R. 399, 405 (Bankr.E.D.Ark.2002); *In re Thornton,* 203 B.R. 648, 652 (Bankr. S.D.Ohio 1996); *In re Porras,* 188 B.R. 375, 379 (Bankr.W.D.Tex.1995). Some courts have found support for this conclusion in the language of § 706(a). *See, e.g., Ponzini,* 277 B.R. at 404 (Bankr.E.D.Ark. 2002) (while the statute provides that a debtor "may" convert, it does not provide

that the court "shall" honor that request); *In re Starkey,* 179 B.R. 687, 691 (Bankr. N.D.Okla.1995) (the phrase "at any time" in § 706(a) was intended to mean "at any stage" of the proceedings, not "regardless of the circumstances.").[4]

Others courts, in qualifying the debtor's right to conversion, have relied on their inherent power to prevent an abuse of process and to protect the integrity of the bankruptcy system. As one court stated:

> [T]he legislative committee's choice of "absolute" in regard to Section 706(a) is infelicitous to say the least and has spawned an interpretation of the statute couched in hyperbolic terms very much at odds with the equitable considerations of eligibility, good faith and appropriateness which are inherent in a court's review of the facts and circumstances in any request brought on by motion.

*In re Marcakis,* 254 B.R. 77, 79 (Bankr. E.D.N.Y.2000); *see also In re Starkey,* 179 B.R. 687, 694 (Bankr.N.D.Okl.1995)("If there is a conflict between the inherent

**2.** The relevant legislative history provides:

Subsection (a) of this section gives the debtor the one-time absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already once been converted from Chapter 11 or 13 to Chapter 7, then the debtor does not have that right. The policy of the provisions is that the debtor should always be given the opportunity to repay his debts .... " H.R.Rep. No. 595, 95th Cong., 1st Sess. 380 (1977); S.Rep. No. 989, 9th Cong., 2d Sess. 94 (1978), U.S.Code Cong. & Admin. News 1978, 5787, 5880, 6336.

**3.** Many of the cases which emphasize (and are cited for) the proposition that a debtor's right to convert under § 706(a) is absolute also state, rather inconsistently, that the right may be limited in extreme or egregious circumstances. *See, e.g., In re Finney,* 992 F.2d 43, 44–45 (4th Cir.1993); *In re Martin,* 880 F.2d 857, 859 (5th Cir.1989); *In re Bowman,* 181 B.R. 836, 842 (Bankr.D.Md.1995).

**4.** This Court disagrees that the language of § 706(a) grants a bankruptcy court the discretion to deny a conversion motion. Unlike many other provisions of the Code, § 706(a) does not state that the debtor may "request" conversion; that conversion will be granted only "after notice and a hearing"; or that a case may be converted "subject to court approval." *Compare, e.g.,* 11 §§ 362(d)("On request of party in interest and after notice and a hearing, the court shall grant relief from the stay .... "); 363(b)(1)("The trustee, after notice and a hearing, may use, sell, or lease ... property of the estate."); 364(b)("The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit .... "); 365(a)("[t]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."); 706(b)("On request of a party in interest and after notice and a hearing, the court may convert a case .... ").

judicial power of the Third Branch of government and mere semi-official remarks made by Congressional committees, then the judicial power must prevail"); *In re Spencer,* 137 B.R. 506, 512 (Bankr. N.D.Okl.1992) ("All courts possess inherent power to protect their jurisdiction and process from abuse .... It follows that any action taken before this Court ... is always subject to review for bad faith ....").

These courts generally require a substantial showing prior to denying a § 706(a) motion to convert. *See, e.g., In re Kuntz,* 233 B.R. 580, 583 (1st Cir. BAP 1999) (evidence of "bad faith" or "extreme circumstances"); *In re Krishnaya,* 263 B.R. 63, 69 (Bankr.S.D.N.Y.2001) (holding that right to convert under § 706(a) is "presumptive" and should be denied only for lack of statutory qualifications or extreme circumstances); *In re Pakuris,* 262 B.R. 330, 335–36 (Bankr.E.D.Pa.2001) (listing several factors to determine bad faith); *In re Dews,* 243 B.R. 337, 340 (Bankr.S.D.Ohio 1999)(court should make determination regarding whether debtor is honestly trying to pursue repayment while retaining certain assets or to forestall collection efforts); *Spencer,* 137 B.R. at 512 (conversion should be denied upon showing of bad faith, gross inequities or extreme circumstances).

█ The Seventh Circuit has not addressed whether the right to convert under § 706(a) is "absolute." Like a number of other courts, however, it has imposed the requirement that a Chapter 13 petition be filed in good faith. *See In re Love,* 957 F.2d 1350 (7th Cir.1992); *see also In re Alt,* 305 F.3d 413 (6th Cir.2002); *In re Banks,* 267 F.3d 875 (8th Cir.2001); *In re*

*Lilley,* 91 F.3d 491 (3d Cir.1996); *Eisen v. Curry (In re Eisen),* 14 F.3d 469 (9th Cir.1994); *Gier v. Farmers State Bank of Lucas (In re Gier),* 986 F.2d 1326 (10th Cir.1993). Arguably, if a Chapter 13 petition may be dismissed for lack of good faith, then a motion to convert from Chapter 7 to Chapter 13 may also be denied upon a showing of bad faith.[5]

█ Having read the various cases and commentary discussing § 706(a), the Court firmly believes that the statute was intended to give only the *honest* debtor an opportunity to voluntarily repay his debts via conversion from Chapter 7. Section 706(a) was not intended as a way for the dishonest debtor to abuse the bankruptcy process, perpetrate a fraud or engage in bad faith behavior. Therefore, the Court concludes that it has the discretion to deny a § 706(a) motion to convert upon a showing of bad faith or where conversion is sought for an illegitimate purpose. The Court emphasizes that motions filed pursuant to § 706(a) should be granted liberally and with the presumption that they are filed in good faith. Accordingly, the party challenging conversion bears the burden of establishing bad faith by a preponderance of evidence.

█ In determining whether § 706(a) motion was brought in bad faith, the Court will examine the "totality of the circumstances," as suggested by *Love. See Love,* 957 F.2d at 1357. More specifically, the Court will consider the timing of the motion to convert, the debtor's motive in filing the motion, and whether the debtor has been forthcoming with the bankruptcy court and creditors; whether the debtor can propose a confirmable chapter 13 plan;

---

5. It should be noted that under § 706(d) of the Code, "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chap-

ter." This generally refers to the *statutory* requirements for filing under a particular Chapter of the Code. *See* 11 U.S.C. § 109.

the impact on the debtor of denying conversion weighed against the prejudice to creditors caused by conversion; the effect of conversion on the efficient administration of the bankruptcy estate; and whether conversion would further an abuse of the bankruptcy process. *See Pakuris,* 262 B.R. at 335–36.

■ In applying the above standard here, the Court finds that the Trustee has sufficiently demonstrated that the Debtor's Conversion Motion was filed in bad faith. Clearly, the Debtor is attempting to keep the Recovery out of the hands of her creditors. She filed her Conversion Motion immediately following the Trustee's turnover request. Despite the presumption under Chapter 7 that she would be required to relinquish the Recovery to the Trustee, she placed a large portion of it in a Certificate of Deposit, thereby diminishing its immediate value due to the penalty for early withdrawal.[6] Furthermore, the Court finds the Debtor's assertion that she did not know the value of the Recovery when she completed her petition or when she attended her § 341 meeting (a mere 10 days before her receipt of the proceeds) to be somewhat disingenuous. Rather, it appears to the Court that she intentionally misrepresented the value of her expected recovery, presumably with the hope that she could avoid having to relinquish the money to the Trustee.

Clearly, the Debtor's creditors will be adversely impacted by conversion. The Debtor's unsecured debts have already been discharged, and unless a party in interest moves to revoke this discharge,[7] the Debtor essentially has only one secured debt that needs to be treated under a Chapter 13 plan, *i.e.,* her automobile loan. Thus, Debtor's unsecured creditors will receive nothing, and the Debtor will receive a substantial windfall. In contrast, under a Chapter 7, the Debtor's creditors will receive a substantial and immediate dividend, aided by the Trustee's avoidance powers. In turn, the Debtor's remaining debts will be discharged, assuming that a party in interest does not move to revoke the discharge under § 727(d), and she will promptly receive her "fresh start."

The Court further notes that the Debtor does not appear to need the unique protection offered by Chapter 13; she is not attempting to cure any arrearage related to a home mortgage, nor does she have any nondischargeable debts that would be eliminated by Chapter 13's "superdischarge." Thus, there is no benefit to the Debtor that otherwise outweighs the detriment to her creditors.

Contrary to the spirit of the Code, the Debtor has concealed and resisted turn-

---

6. Presumably, this transfer is subject to avoidance and recovery by the Trustee pursuant to §§ 549 and 550 of the Code. Whether pursuing such an action is preferable to simply taking the penalty for early withdrawal is another issue.

7. Arguably, if the Court were inclined to grant the Debtor's Conversion Motion, it could order the case converted as of the date of the Motion and effectively revoke the Chapter 7 discharge. In that case, the Debtor would have a substantial amount of unsecured debt to treat under a Chapter 13 plan, and she would have to meet the Code's liquidation and best efforts tests in order to obtain plan confirmation. That is, she would have to devote the equivalent value of the Recovery (or what remains of it), along with her disposable income for a period of at least 36 months, to fund her plan. *See* 11 U.S.C. § 1325. If the Debtor was able to meet and sustain these requirements, her creditors would eventually receive a substantial dividend. However, there is also the risk that the Debtor would be unable or unwilling to make her plan payments and that her case could either be dismissed or reconverted. If she spends what remains of the Recovery in the meantime, her creditors will be left "high and dry."

over of a sizable asset, indicating an intention to frustrate both the Trustee and her creditors. It appears to this Court that the Debtor is not seeking protection under Chapter 13 in a sincere effort to repay her debts but in an effort to retain her Recovery. Accordingly, the Court must conclude that the Debtor's Conversion Motion was filed in bad faith. In exercising its inherent authority to prevent bankruptcy abuse, the Court denies the Debtor's Motion and orders that the Debtor's counsel immediately turn over the amount currently deposited in his trust account, along with the Certificate of Deposit, to the Trustee.