RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0417p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re: JOHN FRANKLIN COPPER,

        *Debtor.*

No. 04-6279

---

ATHENA CHEN COPPER; ESTATE OF SUMIKO YAMAOKA,

        *Plaintiffs-Appellees,*

*v.*

JOHN FRANKLIN COPPER,

        *Defendant-Appellant.*

On Appeal from the Bankruptcy Appellate
Panel of the Sixth Circuit.
No. 02-23450—Jennie D. Latta, Bankruptcy Judge.

Submitted: September 14, 2005

Decided and Filed: October 18, 2005

Before: BOGGS, Chief Judge; NORRIS and COOK, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** Ted I. Jones, VAUGHN, HALL, JONES & VANDEVEER, Memphis, Tennessee, for Appellant. R. H. Chockley, Mimi Phillips, Memphis, Tennessee, for Appellees.

---

## OPINION

---

ALAN E. NORRIS, Circuit Judge. Debtor, John Franklin Copper, appeals from a decision of the Bankruptcy Appellate Panel ("BAP"), *In re Copper*, 314 B.R. 628 (B.A.P. 6th Cir. 2004), affirming a bankruptcy court order denying debtor's motion to convert his Chapter 7 proceeding to Chapter 13 pursuant to 11 U.S.C. § 706(a). On appeal, the debtor takes the position that he had an absolute right to convert and that the BAP erred when it held, "[i]f, upon its review of the facts, the bankruptcy court finds that the debtor's request for conversion was made in bad faith or represents an attempt to abuse the bankruptcy process, the court may deny the requested conversion." *Id.* at 636 (quoting *In re Brown*, 293 B.R. 865, 870 (Bankr. W.D. Mich. 2003)).

1

This appeal requires us to define this circuit's position on an issue that has generated two lines of cases from the bankruptcy courts, including those within our own circuit. On the one hand, a number of bankruptcy courts have held that the right to convert from Chapter 7 to Chapter 13 contains an exception for motions filed in bad faith. *See, e.g., Copper, supra*; *Brown, supra*; *In re Dews*, 243 B.R. 337, 340 (Bankr. S.D. Ohio 1999) (recognizing no absolute right to conversion); *In re Thornton*, 203 B.R. 648, 652 (Bankr. S.D. Ohio 1996). On the other hand, a number of bankruptcy courts have held that the right is absolute. *See, e.g., In re Gibbons*, 280 B.R. 833, 835 (Bankr. N.D. Ohio 2002) ("The terms of § 706(a) are not ambiguous and the plain meaning of the section is that a debtor has the automatic right to convert to Chapter 13 so long as the case has not previously been converted to a Chapter 7 and the debtor is eligible for relief under Chapter 13."); *In re Miller*, 303 B.R. 471, 476-77 (B.A.P. 10th Cir. 2003).

Although there are persuasive arguments on both sides of the issue, we adopt the BAP's opinion for the reasons outlined below.

## I.

The bankruptcy court based its denial of debtor's motion to convert on its finding that he had acted in bad faith. While the debtor does not seriously contest this conclusion, we believe it necessary to provide some factual context to illustrate the type of behavior that triggered the bad faith exception. In its opinion, the BAP drew on the factual findings of the bankruptcy judge to paint the following picture:

> Over the past nine years, the Debtor has taken evasive action to avoid paying his ex-wife, Athena Chen Copper, amounts she was awarded under the parties' divorce decree. . . .

> The Debtor is a Stanley J. Buckman Distinguished Professor of International Studies at Rhodes College in Memphis, Tennessee, a post he has held since 1984. He is a world-renowned expert on China and Taiwan, has authored some 25 books on Asian affairs, and travels to Taipei frequently as the guest of various educational and governmental agencies. The Debtor's income from Rhodes College for 2003 was $89,000. In addition, the Debtor received income from various activities such as teaching, lecturing and writing.

> The Debtor and Ms. Copper were married in 1967 and divorced on October 15, 1993. In the divorce proceeding, Ms. Copper was awarded $2,000 per month in alimony *in futuro* and interests in several annuity contracts. In addition, the Debtor was ordered to pay Ms. Copper's parents the sum of $70,657.60, representing sums found to be taken from Ms. Copper's parents, and interest accrued on those amounts.

> In February 1997, Ms. Copper learned that the Debtor had converted the value of some of the annuity contracts awarded to her, some $152,211.65, to his own use. . . .

> . . . .

> In the Memorandum Order the bankruptcy court states that "[i]n the course of trial, the Court discovered a number of serious false statements in the schedules and statement of financial affairs filed by the Debtor in this case." *Copper v. Copper* (*In re Copper*), Ch. 7 Case No. 02-23450-L, Adv. No. 02-0610, slip op. at 5 (Bankr. W.D. Tenn. Oct. 31, 2003). The next four pages of the bankruptcy court's Memorandum Order highlight the false statements and inconsistencies made by the Debtor in this case both in his schedules and during his trial testimony. Even though the Debtor gave several explanations for the multitude of false statements and inconsistencies, the bankruptcy court determined that none of the explanations was credible. The bankruptcy court stated:

> The Court found the Debtor to be a very difficult witness. He refused, for example, to acknowledge the authenticity of his signature on his bankruptcy petition or on a Consent Order entered in the state court dealing with the payment of [two creditors], claiming that the signatures could have been stamped. He claimed that he does not know what Chapter 7 is, even though he has filed five Chapter 7 petitions. At times, the Debtor seemed to be calculating the likelihood that his statements could be verified. At other times he seemed to be inventing excuses and explanations on the spot. The Debtor seemed to have virtually no appreciation or respect for the gravity of the proceedings initiated by him in the Bankruptcy Court. Given the very high level of the Debtor's education and stature within the educational and international communities, the Court found the Debtor's cavalier attitude and lack of candor to be surprising and offensive.

*Id.* at 10. Apparently, the Debtor's bad conduct also had as negative an impact on the divorce proceedings as it has had on the proceedings in the bankruptcy court. During the two-week trial involving the divorce, the trial judge made the following observations:

> Extensive proof was taken over a two week trial, most of which had to do with the property owned by the parties and the extent to which the defendant [the Debtor] had infringed upon the marital property by secreting accounts in banks and other places and not disclosing the amount of marital assets to the plaintiff. The testimony offered by the defendant was riddled by inconsistencies to the extent that the Court is unable to believe any of the testimony offered by the defendant in his own behalf.

*Id.* at 3 (quoting Memorandum Opinion of the trial judge in the divorce proceedings between Debtor and Ms. Copper).

> The Panel also notes that at oral argument, the Debtor's counsel advised the Panel that his client was the most sanctioned debtor in the district and that counsel himself is probably the most sanctioned attorney in the district. Counsel did not attempt to persuade the Panel that any sanctions received by either himself or his client were unjustified but presented the statement as if it were a badge of honor. Counsel further conceded that during the Debtor's testimony given at the trial of this matter his client was "swimming around the truth." Then, as if to clarify, counsel advised this Panel that his client had in fact told some "egregious lies" during the trial of the adversary proceeding. Counsel's admissions leave this Panel wondering whether the Debtor was even swimming in the same pool as the truth. Obviously, the bankruptcy court's findings regarding the Debtor's complete lack of credibility are well founded.

*In re Copper*, 314 B.R. at 630-33 (footnote omitted).

## II.

"We focus our review of cases appealed from the BAP on the bankruptcy court's decision, examining findings of fact for clear error, and conclusions of law *de novo*." *In re Tirch*, 409 F.3d 667, 680 (6th Cir. 2005) (citing *In re Palmer*, 219 F.3d 580, 583 (6th Cir. 2000)). The instant appeal presents an issue of statutory construction, a legal conclusion that we review *de novo*. *In re Hardenberg*, 42 F.3d 896, 988 (6th Cir. 1994).

The statute at issue reads as follows:

**§ 706 Conversion**

(a) The debtor *may* convert a case under this chapter to a case under chapter 11, 12, or 13 of this title *at any time*, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a) (emphasis added).

Because this court focuses primarily at the bankruptcy court's decision on appeal, we turn first to its reasoning. The bankruptcy court established the debtor's bad faith based upon more than nine years of evasive and vexatious litigation. It then concluded that, because of his bad faith behavior, the debtor was not entitled to discharge pursuant to 11 U.S.C. § 727(a)(4)(A). That ruling has not been appealed. Of interest to us is the bankruptcy court's reasoning with respect to the motion to convert:

> The Court thus turns to consideration of the Debtor's motion to convert this case to Chapter 13. The motion was filed the Friday before trial commenced on Monday, some seventeen months after the filing of the Chapter 7 petition. The Court does not believe that the Debtor has had a sudden change of heart and now wants to repay Mrs. Copper. To the contrary, his testimony at trial indicates that he never intends to repay her unless forced to do so. The Court believes that the Debtor and his counsel wanted to avoid the determination of the dischargeability of these debts and the entitlement of the Debtor to a discharge. . . .
>
> In order for a Chapter 13 plan to be confirmed, a bankruptcy court must find that the plan has been proposed in good faith. 11 U.S.C. § 1325(a)(3). Generally, good faith is measured in terms of whether the plan proposes to devote all of a debtor's disposable income to repayments under the plan for a period of 36 months. 11 U.S.C. § 1322(b)(1)(B). But the term good faith must encompass more than this simple test. The pattern of abuse exhibited by the Debtor over the past nine years leaves little room for doubt that the Debtor's proposal was not made in good faith. The Court believes that the Debtor has always had the ability to repay the obligations owed to Mrs. Copper, even though the misstatements in the Debtor's schedules I and J give the impression that the Debtor has no disposable income. Further, the Court has little confidence that any of the schedules the Debtor would file in connection with a converted case could be relied upon to determine whether the Debtor's plan meets the best interest of creditors' test or whether the Debtor has proposed to devote all of his disposable income to his repayment plan. Finally, it is significant that no other creditors have appeared in any of the proceedings in the bankruptcy case. The Court suspects that in fact there are no other creditors, but that the Debtor repaid some or all of the claims listed long ago. . . . Thus, a Chapter 13 plan for this Debtor would be little different than the installment payment plans he has sought and obtained in another court but failed to honor.

Memorandum Opinion, Oct. 31, 2003, at 15-16. While the bankruptcy court did a commendable job cataloging the facts and explaining the reasons for denying a discharge, the opinion of the BAP provides a more extensive analysis of the statutory scheme at issue:

> There are two lines of cases interpreting § 706(a). One line does in fact hold that the debtor has an absolute right to convert from a chapter 7 to a chapter 13 providing that (i) the case has not already been converted from a chapter 11, 12 or 13 and (ii) the debtor meets the financial eligibility requirements of § 109(e) to be a chapter 13 debtor. These cases find that the bankruptcy court does not have the power to deny conversion. *Pequeno v. Schmidt*, 307 B.R. 568 (S.D. Tex. 2004) (providing detailed outline of cases on both sides of the issue). The Bankruptcy Appellate Panel for the Tenth Circuit has noted:

The stated policy behind § 706(a) is to provide the debtor with "the one-time absolute right of conversion . . . [in order to give] the debtor . . . the opportunity to repay his debts. . . ."   S.Rep. No. 95-989, at 94 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5880.  Pursuant to the plain language of § 706, a debtor may convert at any time if the following two elements are met: (1) the debtor has not previously converted his case; and (2) the debtor meets the eligibility requirements of the chapter to which the debtor wishes to convert.

*Miller v. U.S. Trustee (In re Miller)*, 303 B.R. 471, 473 (10th Cir. BAP 2003) (alteration in original); *see also Martin v. Martin (In re Martin)*, 880 F.2d 857, 858 (5th Cir.1989) (right to convert is absolute); *see also In re Gibbons*, 280 B.R. 833 (Bankr. N.D. Ohio 2002) (same).  The Debtor before this Panel has not previously converted his case and the Appellees do not dispute that the Debtor meets the income and expense limitations of § 109(e).  However, the bankruptcy court determined that the Debtor was not entitled to convert his case due to his bad faith.

*In re Miller* finds that the debtor there had an absolute right to convert even though there was substantial evidence of abuse of the system.  The panel's resolution in *In re Miller* indicated that the best place to deal with abuse of process caused by the conversion was during the confirmation phase of the debtor's plan.  *Id.* at 475 (citing *Mason v. Young (In re Young)*, 237 F.3d 1168 (10th Cir. 2001)).  This line of cases also finds that the converted case can be reconverted on the basis of the debtor's bad faith.

While one might consider it frivolous to convert only to reconvert, such a procedure allows one to comply with both the Congressional mandate of Section 706(a) and the duty to protect the bankruptcy process from abuse.

*Pequeno*, 307 B.R. at 580.

The other – and in our opinion, more reasoned – line of cases, holds that the right to convert is not absolute and that in extreme circumstances conversion can be denied.  "[T]he trend in other jurisdictions, if indeed one is discernable, is to judicially recognize an exception to the right to convert in situations of bad faith." *Id.* at 578. *See Kuntz v. Shambam (In re Kuntz)*, 233 B.R. 580, 585 (1st Cir. BAP 1999) (debtor's one-time right to conversion may be denied in "extreme circumstances" constituting bad faith); *Martin v. Cox*, 213 B.R. 571, 572-73 (E.D. Ark. 1996) (conversion denied due to falsification of documents, failure to disclose assets and other information, false representations in another court, and other misconduct); *In re Wampler*, 302 B.R. 601, 605-06 (Bankr. S.D. Ind. 2003) (conversion denied due to factors including timing of motion, motive for motion, debtor not being forthcoming with court and creditors, and lack of need for chapter 13); *In re Oblinger*, 288 B.R. 781, 785 (Bankr. N.D. Ohio 2003) (court "tends to agree with those cases holding that conversion might . . . be denied under 'extreme circumstances,' such as a debtor's abuse of process," but finding that such circumstances did not exist in that case); *In re Johnson*, 262 B.R. 75 (Bankr. E.D. Ark. 2001) (acknowledging opposing precedent but finding that more persuasive view is that conversion from chapter 7 to chapter 13 can be denied in extreme circumstance for lack of good faith as an abuse of process); *In re Lesniak*, 208 B.R. 902, 906-07 (Bankr. N.D. Ill. 1997) (conversion denied because schedules were "fraught with discrepancies" and because of lack of motivation to pay debts); *In re Thornton*, 203 B.R. 648, 652-53 (Bankr. S.D. Ohio 1996) (conversion denied due to omissions of assets, false testimony, and prepetition conduct); *see also Finney v. Smith (In re Finney)*, 992 F.2d 43, 45 (4th Cir. 1993) (debtor's fraud and filing of motion to convert only after discharge was denied justified immediate reconversion to chapter 7); *In re Eugene Alexander, Inc.*, 191

B.R. 920, 923-24 (Bankr. M.D. Fla. 1994) (finding that chapter 7 debtor has right to convert to chapter 11 but conversion should not be permitted if "cause" exists to convert case back to chapter 7 or to dismiss. "To permit conversion to Chapter 11 in those circumstances would be futile and a wasted act.").

While the United States Court of Appeals for the Sixth Circuit has not directly addressed this issue, the denial of a motion to convert for bad faith is consistent with Sixth Circuit precedent. For example, the Sixth Circuit has held that a bankruptcy court may dismiss a chapter 13 petition that was not filed in good faith. *Alt v. United States (In re Alt)*, 305 F.3d 413, 418-19 (6th Cir. 2002). "If a chapter 13 petition may be dismissed for lack of good faith, it is logical to conclude that conversion from chapter 7 to chapter 13 may also be denied in the absence of good faith." *In re Brown*, 293 B.R. 865, 870 (Bankr. W.D. Mich. 2003) (after discussing *Alt*). Accordingly, this Panel agrees with the court in *Brown* and holds that "[i]f, upon its review of the facts, the bankruptcy court finds that the debtor's request for conversion was made in bad faith or represents an attempt to abuse the bankruptcy process, the court may deny the requested conversion." *Id.*

The Sixth Circuit has adopted a "totality of the circumstances" analysis in evaluating whether a debtor should be permitted to commence a chapter 13 case, *Alt*, 305 F.3d at 419 (quoting *Society Nat'l Bank v. Barrett (In re Barrett)*, 964 F.2d 588, 591 (6th Cir. 1992)), and the same analysis should apply in evaluating whether a debtor should be permitted to convert a case to chapter 13, *Thornton*, 203 B.R. at 652. The Sixth Circuit in *Alt* listed some of the factors that a bankruptcy court might find appropriate to be considered under the facts of a particular case, and stated: "We have also emphasized that good faith is a fact-specific and flexible determination." *Alt*, 305 F.3d at 419 (citing *Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah)*, 836 F.2d 1030, 1032-33 (6th Cir. 1988)).

The bankruptcy court in the appeal before this Panel found that the motion to convert was motivated solely by a desire to avoid a determination that the Debtor was not entitled to a discharge (or that his obligations to Ms. Copper are nondischargeable) and not by a desire to repay his creditors, and that the motion thus represented an improper attempt to "manipulate the Bankruptcy Code." *In re Copper*, Ch. 7 Case No. 02-23450-L, Adv. No. 02-0610, slip op. at 15. The court also relied on the "pattern of abuse exhibited by the Debtor over the past nine years," the belief that "the Debtor has always had the ability to repay the obligations owed to [Ms.] Copper," and misrepresentations in the Debtor's schedules. *Id.* at 15-16. These findings are clearly supported by the evidence. Indeed, at argument counsel for the Debtor all but admitted a lack of good faith, relying solely on his legal position that good faith is irrelevant under § 706(a) of the Code. Accordingly, those findings were not clearly erroneous and support the bankruptcy court's conclusions that the Debtor's actions constitute bad faith and abuse of process such as will justify the denial of a motion to convert under § 706(a).

In deciding that this second line of cases is the one that is the more well-reasoned and the one that this Panel will follow, it is not enough that we determine that our ruling is the best one to prevent abuse of the bankruptcy system. We must also consider the Debtor's argument that the plain language of § 706(a) does not permit us to adopt this position but provides the Debtor with a one-time absolute right to convert. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988) (bankruptcy courts cannot use their equitable powers to override the plain language of a provision of the Bankruptcy Code). We do not agree that the language of § 706(a) has such an effect.

As one bankruptcy court has noted, neither the language of the statute itself nor the legislative history gives a debtor the absolute right to convert. *See In re Starkey*, 179 B.R. 687, 691-92 (Bankr. N.D. Okla. 1995). We agree with the cases finding that the phrase in § 706(a) providing that the debtor may convert "at any time" refers to a time frame. The phrase does not mean "regardless of circumstances." *Id.* at 692; *In re Oblinger*, 288 B.R. at 785 (by use of the phrase "at any time," Congress disavowed a time component in determining a motion to convert from chapter 7 to chapter 13).

Further, the language protecting the debtor from any waiver of the right to convert "is meant to prevent frustration of the Bankruptcy Code by standard provisions in contracts of adhesion. . . . This sentence does not apply to any impairment of the right to convert for reasons of the debtor's own misconduct or comparable circumstances, more in the nature of estoppel than waiver." *In re Starkey*, 179 B.R. at 692.

Finally, it is also relevant that § 706(a) uses the word "may" meaning "might" or "used to express possibility" or "used to express opportunity or permission." Random House Unabridged Dictionary 1189 (2d ed.1993). If Congress had intended to leave the bankruptcy courts with absolutely no discretion in the matter, it would have used the more mandatory phrase of "shall be able to convert." *See* 11 U.S.C. § 1307(b) ("On request of the debtor at any time . . . the court shall dismiss a case under this chapter.").

Therefore, we find that the plain language of § 706(a) does not grant an absolute right to convert.

The language that specifically refers to debtors having a one-time absolute right to convert appears only in the legislative history. *In re Miller*, 303 B.R. at 475 (citing cases). Courts relying on the legislative history, however, must read and interpret the history as a whole. That language states:

> Subsection (A) of this section gives the debtor the one-time absolute right of conversion of a liquidation case to a reorganization or individual repayment case. If the case has already once been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right. *The policy of the provision is that the debtor should always be given the opportunity to repay his debts, and a waiver of the right to convert a case is unenforceable.*

S.Rep. No. 95-989, at 94 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5880 (emphasis added). Thus, the legislative history suggests a one-time absolute right to convert but that phrase cannot be implemented without also looking at the policy, stated in that same legislative history, behind permitting the debtor an absolute right to convert. That is that "the debtor should always be given the opportunity to repay his debts." The bankruptcy court here found that the Debtor never intends to pay his debt to Ms. Copper and that he is abusing the bankruptcy system to thwart all of her efforts to attempt to collect the debt. As evidence of this, the bankruptcy court points out that the Debtor has been given the opportunity in the past to make payments under installment plans and utterly failed to comply with those plans. Permitting the Debtor in this case to convert to a chapter 13 turns on its head the policy reason for providing a debtor with such a right. "The rationale for readily granting conversion under § 706 is to encourage debtors to repay their debts; however, Congress did not intend to allow or condone abuse of the bankruptcy process." *In re McNallen*, 197 B.R. 215, 219 (Bankr. E.D. Va. 1995) (citing *In re Starkey*, 179 B.R. at 694 ("This Court will grant conversion under § 706 readily-but not so readily as to allow and condone abuse.")). Neither will this Panel permit such abuses of the bankruptcy system as those attempted by this Debtor.

*Id.* at 634-37 (footnote and citations omitted). We have quoted the BAP at length for the obvious reason: its opinion does a thorough job of marshaling the case law and advancing the arguments for both positions.

Given the split of authority with respect to this question, fair arguments can be made for either position. That said, we adopt the position of the BAP for the reasons outlined in its opinion: in *Alt*, this court held that a Chapter 13 petition could be dismissed for lack of good faith and, as the bankruptcy court pointed out in *Brown*, if that is so, it is logical to conclude that the conversion from Chapter 7 to Chapter 13 may also be denied in the absence of good faith; the statute itself uses the permissive "may" rather than "shall"; the legislative history – to the extent we look to it at all – contains certain inconsistencies; and, finally, common sense dictates that the bankruptcy court should have authority to police the integrity of its proceedings.

**III.**

The denial of debtor's motion to convert is **affirmed**.