**In re Carol Jean KUHN, Debtor.**

**No. 04–62392 JPK.**

United States Bankruptcy Court, N.D. Indiana, Hammond Division.

March 23, 2005.

George Livarchik, Law Offices of Livarchik and Farahmand, Chesterton, IN, for Debtor.

Daniel L. Freeland, Esq., Daniel L. Freeland & Associates, P.C., Highland, IN, for trustee.

## ORDER ON DEBTOR'S MOTION TO CONVERT

J. PHILIP KLINGEBERGER, Bankruptcy Judge.

This matter is before the Court with respect to a contested matter arising from the motion of the debtor Carol Jean Kuhn ("Carol") to convert her Chapter 7 case to a case under Chapter 13, and the objection of Daniel L. Freeland, debtor's chapter 7 Trustee ("Trustee"), to that motion. The Court has jurisdiction to enter a final determination in this contested matter pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and (b)(1), and N.D. Ind. L.R. 200.1. This matter is a core proceeding as defined by 11 U.S.C. § 157(b)(2)(A) and (O).

The grounds upon which the Trustee's objection is premised are only in part based upon matters before the Court in Carol's case. The underlying thesis of the objection depends upon resolution, in favor of the Trustee, of several issues which are not before the Court in this case but rather will arise in the prior Chapter 7 case of Carol's estranged husband, Jess James Kuhn ("Jess"), who was the debtor in Case No. 03–65542 in the United States Bankruptcy Court for the Northern District of Indiana, Hammond Division in the event the Court makes certain decisions in regard to the Trustee's objection to Carol's conversion motion in Carol's case. Thus there are procedural complexities here that cannot be fully accommodated on the basis of matters before the Court in this contested matter.

The foundation for the Trustee's objection necessitates review of the exemption claimed in Schedule C filed in Jess' case with respect to a parcel of real property commonly described as 525 East Indiana Avenue, Chesterton, Indiana. Both Jess' Schedule A and Carol's Schedule A state that this parcel is owned by them as tenants by the entireties. The construction of the exemption claimed by Jess in his Schedule C with respect to this parcel is absolutely critical to the Trustee's objection: if the Court determines that the manner in which Jess claimed exemption of that property was effective to exempt the property under I.C. 34–55–10–2(b)(5), then the Trustee concedes, as he must, that the shootin' match over Carol's motion to convert is over. If the Court determines the exemption issue in a manner which does *not* effect exemption of the property under I.C. 34–55–10–2(b)(5), then depending upon the manner in which the Court determines other issues, the Trustee may succeed on his objection.

The procedural complexities in reviewing the Trustee's objection arise from the fact that the Trustee's theory involves matters which have yet to be at issue. The Trustee's theory first requires that Jess' claimed exemption for the subject real property be determined to have been effectively taken only under I.C. 34–55–10–2(b)(1) rather than under I.C. 34–55–10–2(b)(5), a matter which is not technically before the Court in this contested matter. If Jess' exemption was *not* effective under I.C. 34–55–10–2(b)(5), then the Trustee's basis for opposing Carol's requested conversion requires the Trustee to reopen Jess' fully administered Chapter 7 case (a matter not before the Court at this time), and to then move to consolidate Carol's Chapter 7 case with Jess' case for the purpose of administering the subject real property for the benefit of Carol's and Jess' joint creditors, another procedural matter not before the Court. Because the Trustee's proposed course depends upon the joint administration of Carol's and

Jess' cases, it is of course necessary for the Trustee to object to the conversion of Carol's case to a case under Chapter 13 due to the procedural impossibility of consolidating a Chapter 7 case of one individual with a Chapter 13 case of another. As the Trustee has postured the issues, whether or not he succeeds is dependent upon another issue which does arise in Carol's case—whether 11 U.S.C. § 706(a) provides a debtor in Carol's position with an absolute right to convert to Chapter 13, or whether her request can be denied or conditioned by the Court under certain circumstances. If the Court were to determine that the right to convert is absolute, the Trustee's proposed scenario for administering the subject real estate for the benefit of Carol's and Jess' joint creditors would be moot, depending as it does on consolidation of two Chapter 7 estates.

The foregoing discussion sets the stage for the issues which this decision does decide, and the issues which it cannot decide. This decision will state the Court's opinion on the effect of the exemption claimed for the tenancy by the entireties real property in Jess' Schedule C, but it will not determine that issue because the actual determination of that issue cannot be made in the context of this contested matter. This decision will next determine the issue of whether 11 U.S.C. § 706(a) provides a Chapter 7 debtor with an absolute right to convert his/her case to a case under Chapter 13. Finally, this decision will determine whether or not Carol's motion to convert will be granted.

### Procedural Posture of Case

Carol's Chapter 7 case was initiated by petition filed on May 13, 2004. On Octo-

ber 8, 2004, Carol filed her Debtor's Verified Motion to Convert to Case Under Chapter 13 [1]; the record establishes that notice of this motion was provided to all creditors and parties in interest in the form required by the Court. The Trustee objected to the requested conversion by objection filed on October 21, 2004, and on October 29, 2004 Carol filed her Debtor's Response to Trustee's Objection to Debtor's Motion to Convert.

An evidentiary hearing was held on November 18, 2004, at which testimony of Carol, the Trustee, and Jess' divorce attorney Jill Sisson was presented. Following the hearing, by its December 2, 2004 order, the Court ordered the parties to submit post-trial briefs on the issue of the extent of the exemption claimed in Schedule C of Jess James Kuhn's ("Jess") prior Chapter 7 bankruptcy case, case number 03–65542, with respect to real property located at 525 East Indiana Avenue, Chesterton, Indiana, specifically whether the manner in which the exemption was stated in Jess' Schedule C effected exemption of that real property pursuant to Ind.Code. 34–55–10–2(b)(5) or merely provided an exemption of $7,500.00 with respect to Jess' interest in the subject real estate pursuant to Ind.Code 34–55–10–2(b)(1). The parties have submitted their respective post trial briefs in accordance with the December 2, 2004 order.

### Factual Record

The pertinent facts in this case are not in dispute and show the following. On May 13, 2004, Carol filed her Chapter 7 petition. Schedule A of her schedules states that she is a co-owner of real estate located at 525 E. Indiana Ave., Chesterton

---

1. The conversion motion was presumably motivated by a motion for stay relief and abandonment filed by Bank One, NA on September 30, 2004, to which the Trustee objected by objection filed on October 11, 2004. Pro-
ceedings with respect to this motion have been suspended pending the Court's determination of Carol's conversion motion by agreement of the debtor, the Trustee and Bank One, NA [Docket Record entry no. 62].

Indiana and that this property is held as tenants by the entireties with her "estranged" husband Jess. The value of the real estate, as listed on Schedule A, is stated to be $90,000.00. In Schedule C of her schedules, Carol claimed an exemption in the subject real estate pursuant to I.C. 34–55–10–2(b)(1). Carol's Schedule C was amended on September 8, 2004, to change the Indiana statute under which the real estate exemption was claimed to I.C. 34–55–10–2(b)(5).[2] The Trustee's motion for extension of the deadline to object to exemptions has been extended by order entered on July 21, 2004 until such time as the Trustee files a no-asset report or a final account. Carol's Schedules I and J were amended on October 14, 2004: while Carol's marital status was stated in both the original and the amended schedules to be "Separated", the amendment to Schedule I increased her total monthly income from $1922.69 to $2547.00, and the amendment to Schedule J increased her monthly expenses from $2064.10 to $2496.10. Both Carol's original and amended Schedule D states that Bank One and Homeside Lending a/k/a Bank One hold liens in the amount of $7,000.00 and $16,300.00 respectively; whereas the original Schedule D designated the property subject to those liens to be jointly owned, the amended schedule appears to state that the property is solely owned by Carol. Interestingly, Schedule A, stating that the real estate at 525 E. Indiana Avenue, Chesterton, Indiana is co-owned "by estranged husband and wife as tenants by entireties", has not been amended.

Jess filed his Chapter 7 petition in Case No. 03–65542 on November 14, 2003. Like Carol's Schedule A, Schedule A of Jess' schedules stated that he is a co-owner of real estate located at 525 E. Indiana Ave., Chesterton, Indiana, as tenants by the entireties with his estranged wife (Carol). Jess' Schedule C claimed exemption with respect to the real estate under I.C. 34–55–10–2(b)(1), and stated that the Value of Claimed Exemption as "100%". Jess' Chapter 7 estate was administered by Calvin D. Hawkins, as Jess' Chapter 7 Trustee. No objection to Jess' exemption was made, and Trustee Hawkins filed a Report of No Distribution on March 2, 2004. Jess was discharged of his debts on February 23, 2004, and his case was subsequently closed on April 20, 2004.

Carol filed her proposed Chapter 13 plan on October 14, 2004. Only one creditor is provided for by the plan (apart from the ubiquitous debtor's counsel and Chapter 13 Trustee): Homeside Lending/ Bank One, with an arrearage claim stated to be $824.00, and current monthly mortgage payments of $442.12 and of $205.98 stated on that creditor's first and second mortgages respectively. No distribution is provided for unsecured creditors. Thus, Carol's conversion to Chapter 13 is apparently sought to pay a mortgage arrearage of $824.00 over a 36 month term at the rate of $22.89 per month, and current mortgage payments through the plan for 36 months.

### Discussion and Decision

This contested matter arises from the debtor Carol Jean Kuhn's motion to convert her Chapter 7 case (Case No. 04–62392) to a case under Chapter 13, and the objection of the Chapter 7 trustee to that motion. The Trustee's stated purpose for objection has to do with his duty to administer Carol's case for the benefit of her creditors to the extent that those creditors were joint creditors of her and Jess prior to Jess' obtaining his discharge in Case

**2.** Debtor's designation under the heading of value of claimed exemption remained the same.

No. 03–65542.[3] In order to do so, the Trustee contends that the exemption claimed in Jess' case for the real property jointly owned by Carol and Jess is limited to the $7,500.00 exemption provided by I.C. 34–55–10–2(b)(1), and that because Jess did not utilize I.C. 34–55–10–2(b)(5) to totally remove the couple's tenancy by the entireties real estate from Jess' case, that real estate is subject to administration for the couple's joint creditors in Jess' case by application of the principles of *In re Cross*, 255 B.R. 25 (Bankr.N.D.Ind.2000) and/or the use of the Trustee's power under 11 U.S.C. § 363(h) by the Trustee in Jess' case. In order to so administer the subject property, the Trustee seeks to block Carol's attempt to convert to Chapter 13, and to then reopen Jess' Chapter 7 case and consolidate that case with Carol's Chapter 7 to administer the real estate for the benefit of paying the couple's joint creditors [joint debts of the two debtors total somewhere in the neighborhood of $19,000–the precise amount is immaterial for the purposes of this decision]. In the Trustee's view, it is necessary to preclude Carol's conversion to Chapter 13, because, if she converts, consolidation of her Chapter 13 case with Jess' Chapter 7 will not be possible.

The resolution of this contested matter is convoluted and complex, involving analysis of issues involving both Chapter 13 and Chapter 7 case administration, and determination of several significant principles for which there is precedent binding upon the Court. At the hub of the Trustee's position is his contention that Jess did not effectively remove the entireties real estate from administration for the benefit of creditors in his Chapter 7 bankruptcy estate because he did not claim exemption under I.C. § 34–55–10–2(b)(5); Carol con-

tends that the exemption in Schedule C in Jess' case was made pursuant to that statute. The Trustee readily concedes that if the exemption in Jess' case was effectively made under I.C. 34–55–10–2(b)(5), his fight is over: by operation of the decision in *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), because a timely objection was not made to Jess' exemption claim, if Jess is determined to have correctly declared exemption under I.C. 34–55–10–2(b)(5), then that exemption stands for all time, and the couple's tenancy by the entireties property was removed from Jess' case for all time and cannot now be administered for the benefit of his creditors.

Thus before we go anywhere else, it is necessary to examine the extent of the exemption claimed by Jess in the couple's real property, the issue to which the Court's order for filing of legal memoranda by Carol and the Trustee was directed. Again, the Court takes great care to delineate that the opinion expressed herein with respect to Jess' claimed exemption is *not* a decision on the merits of that issue in Jess' case. However, the following analysis will be the Court's determination of that issue if and when that issue comes procedurally properly before the Court for disposition on the merits.

As have many other states, Indiana has enacted legislation "opting out" of the federal exemptions stated in 11 U.S.C. § 522(d); I.C. 34–55–10–1, formerly I.C. 34–2–28–0.5. I.C. 34–55–10–2 lists a set of exemptions that are available to Indiana residents. One of these exemptions is a general homestead exemption, stated as follows by I.C. 34–55–10–2(b)(1):

> Real estate or personal property constitution the personal or family residence

**3.** Of course, Jess having obtained his discharge prior to the filing of Carol's case, there

are no "joint" creditors of Carol's and Jess' in Carol's case.

of the judgment debtor or a dependent of the judgment debtor, or estates or rights on that real estate or personal property, of not more than seven thousand five hundred dollars ($7,500.00). The exemption under this subsection is individually available to joint judgment debtors concerning property held by them as tenants by the entireties.

I.C. 34–55–10–2(b)(5) provides what is thought of as the "tenancy by the entireties" exemption, stating the exempt property to be:

Any interest that the judgment debtor has in real estate held as a tenant by the entireties on the date of the filing of the petition for relief under the bankruptcy code, unless a joint petition for relief is filed by the judgment debtor and spouse, or individual petitions of the judgment debtor and spouse are subsequently consolidated.

The immense difference between these subsections is brought to light when the Indiana law of tenancy by the entireties is examined.

The characteristics of tenancy by the entireties under Indiana law were described as follows in *In re Hunter*, 970 F.2d 299, 301 (7th Cir.1992):

Indiana continues to recognize the common law form of marital property ownership-tenancy by the entirety. It is based upon the ancient common law principle that, upon marriage, each spouse loses his or her individual identity, and the two people become one entity. This entity, rather than either spouse, holds title to entirety property. *State v. Union Bank & Trust Co.*, 177 Ind.App. 632, 380 N.E.2d 1279, 1280 (1978) ("The law in this State is clear that property held in a tenancy by the entireties is held by a single legal entity created by the . . . unity of husband and wife."). While neither spouse claims title individually, each spouse has an undivided interest in the whole. *Heffner v. White*, 113 Ind.App. 296, 45 N.E.2d 342, 346 (1942) ("[A] tenancy by the entirety is vested in two persons only, who in law are regarded as only one and each of whom becomes seised of the estate as a whole."). Neither spouse can transfer or encumber the property by himself or herself; it takes a joint act to affect the property. *Union Bank*, 380 N.E.2d at 1280 ("[O]ne spouse cannot convey or encumber the property so held without the consent of the other."). This form of property interest is not limited to the family residence; a husband and wife can own any real estate as tenants by the entirety.

▮ Under Indiana law, real property held as tenants by the entireties is not subject to sale or execution or other legal process sought by any creditor to whom only one of the two marital parties is personally liable for a debt; *Diss v. Agri Business International, Inc.*, 670 N.E.2d 97, 99 (Ind.Ct.App.1996). However, such property is subject to collection process by a creditor having a judgment lien based upon an obligation upon which both spouses are jointly liable to that creditor. In addition, in the context of bankruptcy, a trustee is empowered pursuant to 11 U.S.C. § 363(h) to "sell both the estate's interest . . . and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as . . . tenant by the entirety." Such sale would be appropriate provided it would benefit creditors in the debtor's bankruptcy estate.

The analysis of Indiana law of property held as tenancy by the entireties brings to light the fascinating set of circumstances as presented in this case. Schedule A of Jess' schedules lists the subject property as being held as tenancy by entireties with

his "estranged wife" (Carol). The value of the property, according to Jess' Schedule A, was $90,000.00. Schedule D of the Jess' schedules states total debt of $24,300.00 secured by this real property. Schedule C of Jess' schedules provides:

Description of Property: 525 E. Indiana Ave., Chesterton IN;

Specify Law Providing Each Exemption: I.C. 34–55–10–2(b)(1)

Value of Claimed Exemption: 100%

Current Market Value of Property: $90,000.00

Given the foregoing manner of claiming exemption, we are presented with the following question: Did Jess claim 100% of the "value of claimed exemption" of what is provided by I.C. 34–55–10–2(b)(1), or did he claim 100% exemption of the $90,000.00 of "Current Market Value of Property, Without Deducting Exemptions"? A 100% exemption of the $90,000.00 would in essence not be an exemption pursuant to I.C. 34–55–10–2(b)(1), but an exemption pursuant to I.C. 34–55–10–2(b)(5). In summary, Jess' Schedule C claims an exemption pursuant to either subsection 1 or subsection 5 of I.C. 34–55–10–2(b).

As one might expect, the Trustee argues that Jess took a $7,500.00 exemption. Carol contends that Jess intended to avail himself of the full exemption of the value of the property pursuant to subsection 5, and that the exemption was stated under I.C. 34–55–10–2(b)(1) due to "clerical error". Because the issue before the Court is the effect to be given to an exemption already claimed, the holding of *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992)—which provides that the 30 day deadline for objection to a claimed exemption stated in Fed. R. Bankr.P. 4003(b) is absolute—is not implicated in this decision; *See, In re Morgan–Busby*, 272 B.R. 257, 264–65 (9th Cir. BAP 2002) [ambiguous exemptions are not subject to Rule 4003(b)] referring to *Moldo v.*

*Clark (In re Clark)*, 266 B.R. 163, 170 (9th Cir. BAP 2001) [Rule 4003(b) found to be inapplicable where the debtor's schedules B and C did not adequately describe debtor's interest in the subject property]; *Matter of Schwartz*, 185 B.R. 479, 483 (Bankr. D.N.J.1995) ["the instant case is distinguishable from the *Taylor* case because of the ambiguities present in the Debtor's exemption schedule and the act that the Debtor amended said schedule to resolve the ambiguities"]; *Mercer v. Monzack*, 53 F.3d 1, 3 (1st Cir.1995) [holding that *Taylor* did not preclude its assertion of jurisdiction to determine whether the personal injury settlement funds represented compensation for disability of future earnings for the purposes of the federal exemption statute].

In her Amended Memorandum of Law Regarding Trustee's Objection to Debtor's Motion to Convert Chapter 7 to Chapter 13, pgs. 10–17, Carol extensively argues that exemptions claimed by the debtor must be construed in a manner that favors the debtor. Carol mistakenly argues for the application of a principle that applies to an ambiguity in the language of a *statutory* exemption, rather than to the issue of ambiguity in the manner in which an exemption is claimed. This distinction is made amply clear by the case law from which Carol's position is derived. The Seventh Circuit Court of Appeals, in addressing Illinois' ambiguous *statutory exemptions* of personal property in *In re Barker*, 768 F.2d 191, 196 (7th Cir.1985), stated that "this circuit and the courts of Illinois have consistently held that *personal property exemption statutes* should be liberally construed in order to carry out the legislature's purpose in enacting them—to protect debtors." (emphasis supplied). In more pertinent part, the court wrote:

This clear legislative intent to grant protections to debtors and the court's liberal construction of exemption statutes convince us that a case such as this one, where an exemption statute might be interpreted either favorably or unfavorably vis-a-vis a debtor, we should interpret the statute in a manner that favors the debtor.

*Id. See also, In re Owen*, 2002 WL 531570 at *5 (S.D.Ill.) ["Generally, ambiguous bankruptcy exemption provisions should be construed in favor of the debtor"]; *In re De Vries Jr.*, 76 B.R. 917 (Bankr. N.D.N.Y.1987) ["Code § 522(b), and those state exemption statutes adopted pursuant thereto, are to be liberally construed in order to effectuate the debtor's 'fresh start'"]; *In re Vale*, 110 B.R. 396, 400 (Bankr.N.D.Ind.1989) ["Indiana exemption laws are liberally construed to affect their intent and purpose"]; *In the Matter of South Bend Community School Corp.*, 215 B.R. 1012, 1015 (N.D.Ind.1997) ["... if it is possible, to construe an exemption statute in ways that are both favorable and unfavorable to the debtor, then favorable method should be chosen"].

No such *statutory ambiguity* exists here. I.C. 34–55–10–2(b)(1) clearly and unambiguously provides the debtor with a $7,500.00 homestead exemption, while I.C. 34–55–10–2(b)(5) provides that a debtor may exempt *any interest* that the debtor has in real estate held as a tenants by the entireties. The debtor's reliance on the abovementioned case law discussing construction of ambiguous statutes is misplaced in this case.

The ambiguity for the purposes of this matter arises from the *manner* by which Jess claimed his real estate exemption. As the Trustee correctly notes in his brief, "courts have consistently found that ambiguities in claimed exemptions should be construed against the Debtor". Trustee's Trial Brief pg. 4. This statement is supported by ample authority. In *In the Matter of Schwartz*, 185 B.R. 479, 483 (Bankr.D.N.J.1995), the following is stated:

Thus, the Debtor's Petition pertaining to the SBS IRA is ambiguous and the Court notes that courts have consistently held that ambiguities in the schedules will be construed against the debtor. *See, e.g., In re Hyman*, 123 B.R. 342 (9th Cir. BAP 1991), *aff'd*, 967 F.2d 1316, 1319 n. 6 (9th Cir.1992) (holding that any ambiguities in a debtor's schedules are construes against the debtor, court concluded that debtor's exemption was limited to amount stated by debtor as exempt value rather than full value of homestead); *Addison v. Reavis*, 158 B.R. 53, 59 (E.D.Va.1993) (same, except debtors' exemptions for interests in partnership were limited to value debtors listed), *aff'd* without op. sub. nom., *Ainslie v. Grablowsky*, 32 F.3d 562 (4th Cir.1994), reported in full, 1994 WL 410995, 1994 U.S.App. LEXIS 20701 (4th Cir.1994). Thus, the 30–day period to object did not run until the Debtor clarified his exemption schedule *484 as it relates to the SBS IRA. [FN3] *See, In re Zimmer*, 154 B.R. 705, 709 (Bankr. S.D.Ohio 1993) (stating "where a debtor's schedules are too ambiguous to ascertain exactly what property is claimed as exempt, the strict time constraints of Taylor are not applicable until the schedules have been clarified or the trustee is otherwise put on notice of the precise nature of the debtor's claim of exemption").

Similar principles were also expressed by *In re DeArakie*, 199 B.R. 821, 825 (Bankr.S.D.N.Y.1996), referring to *In re DeSoto*, 181 B.R. 704 (Bankr.D.Conn.1995); *In the Matter of Sherbahn*, 170 B.R. 137, 139 (Bankr.N.D.Ind.1994) ["Since debtors control the information placed on their

bankruptcy schedules, any ambiguities must be construed against them"]; and *In re Clark*, 266 B.R. 163, 168 (9th Cir.BAP 2001) ["The trustee correctly points out that a debtor controls the schedules and bears the burden of enabling trustees and creditors 'to determine precisely whether a listed asset is validly exempt simply by reading a debtor's schedules,' so that any ambiguity is construed against the debtor"].

Based on the foregoing framework for the construction of ambiguous *claims* of exemption, the factual analysis begins.

The "ambiguity" here arises from the identification of the exemption claimed as "I.C. 34–55–10–2(b)(1)" while stating the value of the claimed exemption as "100%". Carol's counsel, who was also Jess' bankruptcy counsel, argues that he intended to take, and in fact has taken, an exemption pursuant to I.C. 34–55–10–2(b)(5), and that the fact that the exemption was declared under subsection (b)(1) was due to a "clerical error"[4]. In addition, Carol's counsel asserts that the 100% value of the exemption refers not to I.C. 34–55–10–2(b)(1), but to the market value of the real estate, $90,000.00. As explanation of why Jess specified the value of his real estate exemption as 100% rather than a specific monetary figure, counsel argues that "debtor used 100% for each exemption category that per statute has no specified dollar limitation". [Carol's amended memorandum pg. 15].

In *Sherbahn*, Judge Robert Grant shed some light on the resolution of exemptions, when ambiguously claimed, stating:

A claimed exemption must be read in its entirety. This includes not only the description of the property in which the exemption was claimed but also the value the debtor placed upon the claimed exemption. The description of the property serves only to identify the asset in which an exemption has been claimed. The extent of that exemption is determined by the value claimed exempt which the debtor placed in its schedule of exemptions. Thus, the Ninth Circuit did not allow the debtor in Hyman to exempt the entire value of its residence, by describing the exempt property as "homestead" when the value placed upon that exemption was only $45,000.00. *Hyman*, 967 F.2d at 1319. Similarly, the debtors in Addison were not allowed to enlarge their claimed exemption, beyond the dollar value placed upon it in their schedule of exemptions, based upon the way they had described and valued the asset in their schedules. *Addison*, 158 B.R. at 59–60.

*Sherbahn*, 170 B.R. at 140.

Reading Jess' exemption in its entirety, considering the arguments of the parties' made at trial as well as in post-trial briefs, the Court concludes that Jess claimed 100% of the $7,500.00 exemption pursuant to I.C. 34–55–10–2(b)(1), and not 100% of the value of the property. The critical element in a Schedule C exemption claim is the statutory provision under which the exemption is claimed, and viewed in that context, one could quite persuasively argue that there isn't any ambiguity at all—Jess' Schedule C claims 100% of the value of the exemption allowed by I.C. 34–55–10–2(b)(1), i.e., $7,500.00.

---

4. Shades of Rosemary Woods. The Court did not take evidence on this assertion and isn't going to. This contention is belied by the fact that Carol's original Schedule "C" exemption was identically worded to Jess' Schedule C exemption, and that Carol's was amended to state the exemption statute as I.C. 34–55–10–2(b)(5). Interestingly, Carol's counsel did not comment on this curious parallel at all. Two "oops" by the same law office in two totally interrelated cases will not justify a self-serving evidentiary hearing.

Carol's counsel argues in his post trial brief, as he did at trial, that this is the manner in which he usually fills out Schedule C, stating that "[d]ebtor uses a **dollar amount** for each exemption category where the statute provides a specified dollar limitation. On the other hand, Debtor uses **100%** for each exemption category that per statute has no specified dollar limitation ..." [Debtor's amended memorandum pg. 15]. The Court is not persuaded by this explanation: "(I)n order to furnish a trustee with sufficient detail to enable the trustee to reach an intelligent determination, the debtor is required to list in the third column of Schedule C a numerical value of each claimed exemption." *In re Bell,* 179 B.R. 129, 131 (Bankr.E.D.Wis.1995). Carol's assertion that the 100% stated under the heading "Value of Claimed Exemptions" means 100% of the market value of the property might make some sense if, despite the alleged clerical error in identification of the Indiana exemption statute, the heading under which the exemption amount should be stated read not "value of claimed exemption", but rather "portion of property value claimed exempt." In that case, the 100% designation would reflex to Schedule C's fourth column's stated value, rather than to the second column's specification of the law under which the exemption is claimed. Construing Jess' Schedule C as being internally consistent, the 100% claimed for the real estate reflexes back to the exemption statute stated in the second column, meaning the value of the claimed exemption is $7,500.

The Court was not able to locate, and the parties did not provide the Court, with any case law with the same factual circumstances. The Court was able to locate cases that have enough similarity to the case at bar to create a point of reference.

The most factually similar case was addressed by the First Circuit Court of Appeals in *Mercer v. Monzack,* 53 F.3d 1 (1st Cir.1995). There, prior to the bankruptcy filing, the debtor was injured in an automobile accident and sued for compensatory damages. His schedule of assets valued a personal injury claim at $40,000.00 and he claimed an exemption in the following manner:

| Statute | Exempt Amount |
|---|---|
| 11 USC § 522(d)(10)(c) | 100% |
| 11 USC § 522(d)(11)(D) | $7,500 |
| 11 USC § 522(d)(10)(E) | 100% |
| 11 USC § 522(d)(5) | $3,750 |

Subsequently, the case was settled for $50,000 without any designation as what portion, if any, constituted compensation for a "disability," "personal bodily injury," or "loss of future earnings". *Mercer,* 53 F.3d 1. The debtor then claimed that the entire $50,000 was exempt because he specified 100% as an exemption amount. The bankruptcy court, in finding that the settlement included no compensation for disability or lost future earnings, ordered the debtor to turn over the entire settlement fund except for $7,350 exempt property. In addressing the debtor's argument that he intended to exempt the entire settlement amount, the court wrote:

Notwithstanding Mercer's argument that he *intended* to exempt the entire settlement fund, Schedule B–4 plainly listed discrete statutory citations supporting the various exemption claims, thereby restricting both the focus of the exemptions claimed and the description of the particular right or interest in property of the estate to which the claims applied. Consequently, pursuant to its exclusive summary jurisdiction, *see, e.g., In re Stumpff,* 109 B.R. 1014, 1017 (Bankr.E.D.Okla.1989), it remained for the bankruptcy court to determine whether the disputed right or interest in property of the estate was listed on Schedule B–4.

*Id.* at 3. Likewise in this case, notwithstanding debtor's argument that Jess **intended** to exempt the entire value of the property, his Schedule C clearly states the applicable statutory provision supporting the exemption to be a statute which provides a limited exemption of $7,500.

The case of *In re Alderman*, 195 B.R. 106, 111 (9th Cir. BAP 1996) is also on point. In that case, the debtor claimed property exempt as a homestead under Montana law. Under the heading "value of the exemption claimed", the debtor stated "maximum allowed". The debtor had less than a 100% interest in the property (listed in the schedules at 12.2%), and Montana's available homestead exemption was limited to $40,000 for the entire property. Montana law limits a claimant's homestead exemption to an amount proportionally to his individual interest. In resolving the dispute as to how much exemption was actually claimed, the court wrote that "when debtors claim an exemption at the 'maximum allowed,' that can only mean the maximum allowed by law." *Alderman*, 195 B.R. at 111. Thus, since Montana law provides for a $40,000.00 of maximum allowed exemption, the debtor has only exempted his ownership percentage from that amount. The court thus assumed, without explanation, that when the debtor valued an exemption as the "maximum allowed", he was referring to an exemption allowed by the applicable statute. Similarly here, when the Jess referred to the value of an exemption as 100%, he was referring to a 100% of exemption provided by I.C. 34–55–10–2(b)(1), which is $7,500.00.

The case of *In re Carlson*, Case No. 04–30383 (Bankr.N.D.Ind.2004) [unpublished decision by the Honorable Harry C. Dees. Jr., Chief Judge], which is extensively relied upon by Carol, provides her with no support. Claiming her exemptions in schedule C for property which she owned with her non-debtor spouse as tenants by the entireties, the debtor used the wrong subsection of the Indiana exemption statute. As in the case at bar, Carslon claimed an exemption pursuant to I.C. 34–55–10–2(b)(1). The debtor in *Carlson* also, unlike the debtor in the present case, placed a specific monetary value, a $100,000, under the heading "value of claimed exemption" in her schedule C. The focal point of Judge Dees' decision was not the resolution of ambiguity in the claimed exemption, but rather the existence of joint debts. As the *Carlson* court wrote: "... the existence of a joint creditor on the date of the debtor's petition might lead the court to deny the exemption of the debtor's entirety property and to allow the trustee to seize the debtor's property for the benefit of that joint claim." *Id.* pg. 9. The *Carlson* trustee failed to establish that the medical bills in question were joint obligations of the debtor and the non-debtor spouse. Because no joint-debts existed in *Carlson*, and because Carlson's schedule C provided for a monetary value of the exemption claimed, that case is clearly distinguishable.

The case of *The Matter of Sherbahn*, 170 B.R. 137 (Bankr.N.D.Ind.1994) is not helpful to the debtor, as it is clearly distinguishable. There, the debtor's schedule of assets included "growing crops" for which a "41% of growing crops" exemption was claimed. There, unlike here, the debtors had also placed a *monetary value* on the exemption of $5,950.00. When the matured crops were eventually sold, the realized value was $56,438.56. The debtors claimed that they intended to exempt 41% of the value of the crop when it was eventually sold, a sum much greater than $5,950.00. The issue in *Sherbahn* was slightly different than the one before the Court: who is entitled to the post-petition appreciation in the value of property of the

estate in which an exemption has been claimed? *Id.* at 138. The *Sherbahn* court, however, rejected the debtors' argument that they are entitled to 41% of the value of the entire crop at the time it was sold because of the way they described the property in which the exemption was claimed. *Id.* at 139. Likewise, the debtor here relies on the property description, i.e., owned by husband and estranged wife as *tenants by entireties.* This reliance on the property description would be more appropriate if Jess' Schedule C claimed an exemption pursuant to the appropriate section of the Indiana exemption statute. Carol would have the Court hold that the property description takes precedence over the statutory designation of a particular exemption. The Court will not, and in fact cannot, do so in light of the law which requires that ambiguities must be construed against the debtor.

The cases of *The Matter of Schwartz*, 185 B.R. 479, 483 (Bankr.D.N.J.1995)(debtor failed to indicate whether he was claiming exemptions under § 522(d)(1) or § 522(d)(2)); *In re Clark*, 266 B.R. 163 (9th Cir. BAP 2001); *In re Hyman*, 967 F.2d 1316 (9th Cir.1992)(debtor specified exempt monetary amount of exemption) are likewise distinguishable.

Based upon the foregoing analysis, it is the Court's opinion that Jess' Schedule C elected an exemption for the tenancy by the entireties real estate under I.C. 34–55–10–2(b)(1), and this exemption is $7,500.00 (100% of the allowed statutory amount).[5]

Interestingly, Carol's original Schedule C was worded identically to Jess' with respect to the real estate. Had the exemption not been amended (without deciding in any manner that the amended exemption is valid[6]), Carol's exemption in

---

5. This opinion would make unnecessary any application of the principles of *In re Cross*, 255 B.R. 25 (Bkrtcy.N.D.Ind.2000) to administer the tenancy by the entireties property in Jess' case for the benefit of joint creditors. In order for *Cross* to be implicated, the I.C. 34–55–10–2(b)(5) exemption must first be taken, and then must be challenged within the deadline period provided by Fed.R.Bankr.P. 4003(b). By not declaring the property exempt under this provision, Jess has left all of *his interest in the property* in the estate and has limited the value of the exemption *as applied to his interest* to $7500. The nature and extent of an individual spouse's interest in tenancy by the entireties property for the purpose of bankruptcy administration of such property is the subject of an order of this Court entered on April 7, 2004 in the case of *In re Chesner*, Case No. 04–60081, a decision in which the Court left the principles of valuation of that interest for determination by State courts. The issue in *Chesner* was the effect of 11 U.S.C. § 522(f) on the judicial lien of a creditor of both spouses when only one spouse filed for bankruptcy and claimed exemption of entireties property under I.C. 34–55–10–2(b)(5). *Chesner* was a default circumstance in that the judgment lien creditor had not appeared in response to the debtor's

§ 522(f) motion, and that creditor had therefor not challenged Chesner's claimed entireties exemption under the principles of the *Cross* decision. Had the judgment lien creditor appeared in the § 522(f) matter and asserted the principles of *Cross* in response to it, Chesner's § 522(f) action would have been subject to the *Cross* analysis. Whatever the value of Jess' interest in that property is, the analysis of the claimed exemption in this decision allows the Trustee in Jess' case—if that case is reopened—to utilize 11 U.S.C. § 363(h) to sell both Jess' and Carol's interest, and to then apply the realized value of Jess' interest, less his $7500 exemption, to the payment of *all* allowed unsecured claims of Jess' creditors, not merely the joint creditors of Jess and Carol. This is of course a moot point to the extent that all creditors of Jess are joint creditors with Carol, but it does serve to illustrate that *Cross* will not be applicable in Jess' case, given the Court's analysis of the exemption claimed by Jess in the subject real property.

6. There is no issue in this context before the Court: the Trustee hasn't objected to any exemption claimed by Carol, and the Trustee's deadline to object to any exemption claimed by Carol has not expired.

the real estate would have been limited to $7,500.00 of the value of her interest in the real property, and the Trustee in Carol's Chapter 7 case—but for potential conversion to Chapter 13—could use 11 U.S.C. § 363(h) to realize the value of Carol's interest, less the $7,500.00 exemption, for Carol's creditors. There is one more interesting twist. Carol's amended Schedule D appears to state that the subject property is solely owned by her, and yet Schedule A hasn't been amended. The Schedules of course are to reflect the status of property on the date of the filing of the original petition, even in the event of conversion of a case originally initiated under Chapter 7 to a case under Chapter 13 [11 U.S.C. § 1306; 11 U.S.C. § 348(a)], and exactly what is being conveyed by the Amended Schedule D is not of particular moment and will work itself out.[7]

*Conversion Under 11 U.S.C. § 706(a)*

■ This contested matter concerns a motion to convert the debtor's Chapter 7 case to a case under Chapter 13 pursuant to 11 U.S.C. § 706(a), which states in pertinent part:

(a) The debtor *may convert* a case under this chapter [Chapter 7] to a case under chapter 11, 12 or 13 of this title *at any time*, if the case has been not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the *right to convert* a case under this sub-

section is unenforceable. (Emphasis supplied).[8]

At issue in this contested matter is whether section 706(a) provides the debtor with an absolute right to convert to a case under Chapter 13, and if not, whether the set of circumstances as present in this case prevent or condition the sought conversion.

■ The first step in the analysis of § 706(a) is of course to seek to determine the intent of Congress from the language of the statute itself; *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322 (7th Cir.1997). If the language of the statute is clear, analysis ceases.

At first blush—and a first blush has led many astray before—the second sentence of § 706(a) may seem to impart to the debtor an unfettered path to conversion, referring as it does to "the right to convert a case under this subdivision". However, the use of the word "right" does not have any connotative quality as to the extent of the "right", and thus does not compel a construction that this right is "absolute." The second sentence actually does nothing to define the "right", but rather reflexes back to the first sentence for the description of the "right" "under this subsection." It is therefore upon the first sentence of the statute that analysis must focus.

■ What of the phrase "debtor *may convert*"? Congress has no problem in being directive when its intention is to direct a court to achieve a certain result.[9]

---

7. If the property was solely Carol's on the date she filed her Chapter 7 case, it would be subject to complete administration in that case, and its value would be fully taken into account under 11 U.S.C. § 1325(a)(4) even if her case were converted to a case under Chapter 13.

8. One must be mindful of the fact that other provisions of the Bankruptcy Code which provide for conversion of a case under one Chapter to a case under another Chapter at the initiation of the debtor are similarly worded.

11 U.S.C. § 1307(a) states that "(t)he debtor may convert a case under this chapter to a case under chapter 7 of this title at any time", and that "(a)ny waiver of the right to convert under this subsection is unenforceable". With respect to Chapter 12 cases, 11 U.S.C. § 1208(a) is identically worded.

9. For example, 11 U.S.C. § 502(b) provides with respect to allowance of claims that "the court ... *shall* determine the amount of such claim ... and *shall* allow such claim in such amount." (emphasis supplied). 11 U.S.C.

The language of the first sentence of section 706(a) is indeed curious—focusing as it does on the debtor's action in seeking something—if it is intended to require the court to immutably respond to the request. This curiosity is exacerbated by the language of both 11 U.S.C. § 1208(b) and of 11 U.S.C. § 1307(b), both of which focus on the court and give the court no latitude:

> (b) On request of the debtor at any time, if the case if the case has not been (previously converted), the court *shall* dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

These provisions are mandatory directives, depriving the court of any discretion, save perhaps the use of 11 U.S.C. § 105(a) to prevent abuse of the bankruptcy process (and perhaps not even that). Isn't it interesting that in the context of dismissal at the debtor's request, the statutes are worded as requiring the court to obey the debtor's "right to dismiss", but that there is no similar directive *to the court* in the context of a conversion requested by a debtor? This is not a distinction without substance, as illuminated by Fed. R. Bankr.P. 1017(f), which states:

> **(f) Procedure for dismissal, conversion or suspension**
>
> (1) Rule 9014 governs a proceeding to dismiss or suspend a case, or to convert a case to another chapter, except under §§ 706(a), 1112(a), 1208(a) or (b), or 1307(a) or (b).
>
> (2) Conversion or dismissal under §§ 706(a), 1112(a), 1208(b), or 1307(b) shall be on motion filed and served as required by Rule 9013.
>
> (3) A chapter 12 or chapter 13 case shall be converted without court order when the debtor files a notice of conversion under § 1208(a) or 1307(a). . . .

As the foregoing rule makes clear, a conversion from either Chapter 12 or 13 to Chapter 7 upon request of the debtor is automatic—no court order is required. However, not so with a conversion requested by the debtor under 11 U.S.C. § 706(a) or § 1112(a), or a dismissal requested by the debtor under §§ 1208(b) or 1307(b). A motion served upon certain parties in interest is necessary, and of course a motion implies that the requested relief is subject to some court review; *See*, Fed. R. Bankr.P. 9013, which essentially defines a motion as the mechanism for requesting an order. As we have seen, Congress has directed the court to grant motions under §§ 1208(b) or 1307(b), so why is it necessary to move for the court's blessing? One possible explanation is that the right to dismiss is not absolute if the case had been converted previously, and thus court review is necessary to review the conditions of this "right" to dismiss. Similarly, § 1112(a) is a conditional provision, and thus the court's review is necessary. So, here's the twenty-four thousand dollar question: If the debtor's "right" to convert from Chapter 7 to Chapter 13 is "absolute", why is a motion required, rather than the procedure implemented by Fed. R. Bankr.P.9013(f)(3)? One cogent possible explanation is that to the extent provided by 11 U.S.C. § 706(d), conversion is not automatic just because the debtor wants to—the debtor must qualify for relief under the chapter to which conversion is sought, and the order of the court is necessary to assure that the debtor satisfies this requirement. Well and good as far as it goes. And yet we run into the curious distinction between the language

---

§ 943 states that the "court *shall* confirm the plan (of municipal reorganization) if (certain findings are made)", and the confirmation provisions of 11 U.S.C. § 1129(a), 11 U.S.C. § 1225(a) and 11 U.S.C. § 1325(a) are similarly directive.

used in §§ 706(a) [focusing on the debtor, who "may"], as contrasted with that used in §§ 1208(b) and 1306(b) [focusing on the court, which "must"]. The rules of construction of the Bankruptcy Code stated in 11 U.S.C. § 102 aren't helpful: while subsection (4) states that " 'may not' is prohibitive, and not permissive", there is no rule for the term "may". In fact, by inverse inference, it is the word "not" that causes "may not" to be prohibitive, and thus without the "not", the term "may" would seem to be only permissive of something that can be sought.

■ Given the foregoing, the "right" specified in the second sentence of 11 U.S.C. § 706(a) which cannot be waived is the debtor's "right" to ask to convert; e.g., by signing a creditor-prepared boilerplate form the debtor who initiates a Chapter 7 case doesn't place himself in eternal liquidation at the insistence of that creditor if circumstances are such that the debtor can achieve a confirmable Chapter 13 solution which didn't seem to exist when the Chapter 7 was filed. That's all the second sentence means; the right to file a motion pursuant to Fed. R. Bankr.P. 1017(f)(2) cannot be waived.

■ The phrase "at any time" in the first sentence quite clearly means at any time in the Chapter 7 process prior to the closing of the case, and thus doesn't restrict the filing of the debtor's request to any particular point in the Chapter 7 process.[10] There really can be no other meaning for this phrase, temporally descriptive as it is: this phrase has no connotative quality as to the *nature* of the "right" otherwise defined by the language of section 706(a).

The Court deems the statutory construction analyses of cases such as *In re Marcakis,* 254 B.R. 77 (Bankr.E.D.N.Y.2000) and *In re Starkey,* 179 B.R. 687 (Bankr. N.D.Okla.1995) to be on the mark, stating as they do analyses of the language of section 706(a) in consonance with that expressed above.

There are myriad reasons why the right to convert cannot be deemed absolute in the context of circumstances of administration of a debtor's Chapter 7 case. Most debtors don't seek to convert to Chapter 13 from a Chapter 7 to pay their creditors—they convert to preserve property which would otherwise be lost in the Chapter 7, or to avoid the determination of § 523(a) nondischargeable debts that is mooted by the superdischarge provision of 11 U.S.C. § 1328(a). Let's posit a not-uncommon scenario. The Chapter 7 trustee has determined that a parcel of real estate, perhaps even the debtor's house, has substantial equity for the benefit of general creditors of the debtor. The trustee files a motion to sell that property, which is approved by the bankruptcy court so that the contract is now binding on the Chapter 7 estate and on the purchaser, but a closing has not yet been scheduled. The debtor then files a motion to convert under § 706(a) and contemporaneously with the motion files a plan that seeks to save the property and to pay the equity under the plan, over the five year requested term of the plan, pursuant to 11 U.S.C. § 1325(a)(4). If the conversion is approved, what happens to the binding contract to sell, a contract upon which the purchaser has relied—does it carry over into the Chapter 13 case and bind the debtor and eviscerate his plan? And what is the exchange for creditors if it does? If

**10.** Although this court, as do some others, prohibits the conversion when the debtor has been granted a discharge in the Chapter 7 case, for reasons that aren't pertinent to this case.

the Chapter 7 trustee sells the property, there is a guaranteed dividend for creditors, as opposed to the proposed liquidation dividend in the debtor's plan. What if the debtor's plan is not feasible: although not a criteria for Chapter 13 eligibility [See, 11 U.S.C. § 706(d) and 11 U.S.C. § 109(e)], the delay in playing out the Chapter 13 to the point of converting the case back to Chapter 7 because the debtor cannot confirm a feasible plan under 11 U.S.C. § 1325(a)(6) will have in all probability eviscerated the Chapter 7 Trustee's approved sale. And of course, if during the Chapter 13 case the debtor doesn't pay real property taxes or mortgage payments—thereby diminishing the equity in the property—even if the case is converted back to Chapter 7 rather than dismissed, creditors will be harmed.[11] The "automatic right to convert under § 706(a)" construction doesn't play well in this circumstance, and leaves open more questions than it answers.

There is a more concrete reason for construing 11 U.S.C. § 706(a) to provide a bankruptcy court with discretion to prevent untoward results upon conversion to Chapter 13 without having to resort to 11 U.S.C. § 105(a), one which all experienced bankruptcy practitioners have encountered. Let's posit a case in which a Chapter 7 debtor "inadvertently" omits property of significant value from the Chapter 7 schedules. By luck or fate or hard work— it's hard to tell the difference sometimes— the Chapter 7 trustee gets wise and finds the hidden asset(s) and begins the process of administering them in the case for the benefit of creditors. "OOPS," says the debtor, "I don't want to lose my $50,000 undisclosed bank account, what do I do?!!?" The wise Chapter 13 practitioner whom the debtor consults says— "Not a problem: you have the absolute right to convert to a Chapter 13 under 11 U.S.C. § 706(a), and that'll put an end to the nasty Chapter 7 trustee trying to glom onto that account. All you'll have to do is confirm a plan that satisfies 11 U.S.C. § 1325(a)(4) by taking the value of the account into account in your distribution to creditors, and then pay that value over 3–5 years in convenient monthly installments over the term of your plan." The debtor replies, "But what happens to the account?" The wily practitioner responds, "It's yours to do with as you will. Even if your Chapter 13 case is unsuccessful and even if the case is converted back to Chapter 7, only what's left of the account is there for the Chapter 7 trustee thanks to 11 U.S.C. § 348(f)(1)(A). Hey, with the money in the account, while you're in Chapter 13, buy a couple of new cars with cash (make sure they're kind of moderately priced), buy new appliances, build that dormer extension to your house, go out to eat at Red Lobster every night, buy new clothes, send your kid to summer camp, etc., etc., etc.—no one's going to say then that you spent the money in bad faith, so 11 U.S.C. § 348(f)(2) won't apply." "Wow, thanks," says the debtor, "you're really smart." The wily lawyer, humble and honest for once, replies, "Don't thank me. It's your absolute right to convert your Chapter 7 case to a case under Chapter 13. Nuts to the Chapter 7 trustee! Hah!!"

When one tracks the evolution of case law construing the nature of the debtor's "right" under 11 U.S.C. § 706(a), one will note that early cases pretty much uniformly held the right to be absolute. One will then note that there was obviously a growing awareness among bankruptcy judges

---

11. In this scenario, the debtor has no absolute right to dismiss the Chapter 13 case [11 U.S.C. § 1307(b)], and if the case were reconverted, the property would be subject to administration in the second tier Chapter 7 case [11 U.S.C. § 348(f)(1)(A)].

that the "absolute" right analysis created the potential for serious abuse, and thus more and more cases began to condition the "right" to prevent the potential for abuse. There is now a split in authority on this issue. A slight majority holds that section 706(a) provides a debtor with an absolute right to convert, subject only to statutory limitations, while a large and growing minority—actually by far the majority of more recent decisions on this issue—rely on either bad faith or extreme circumstances as grounds for denying conversion.[12] The courts that would have binding authority upon this Court, the United States Supreme Court, the Seventh Circuit Court of Appeals, and the District Court for the Northern District of Indiana have yet to address this issue. In circumstances in which a debtor filed a section 706(a) conversion motion to evade the Chapter 7 Trustee's hot and heavy breathing down the debtor's neck to administer assets which the debtor "forgot" to disclose in his schedules, the Court has previously conditioned conversion on the debtor's provision of certain protection to creditors in the Chapter 13 case. This decision now memorializes the Court's construction of 11 U.S.C. § 706(a) upon which its prior decisions were based.

The Court holds that 11 U.S.C. § 706(a) does *not* provide a debtor with an absolute right to convert a Chapter 7 case to a case under Chapter 13.

The next issue is the standard to be applied to determine when the debtor's right to seek conversion should be abridged.

■ Certain courts depart from the absolute right analysis only to the extent that "bad faith" is determined with respect to the circumstances of conversion; *In re Brown*, 293 B.R. 865, 871 (Bankr. W.D.Mich.2003) and *In re Wampler*, 302 B.R. 601, 605 (Bankr.S.D.Ind.2003) are examples of this approach. In holding that section 706(a) does not provide a debtor with an absolute right to convert, both courts relied on an analogy from their respective Courts of Appeals. Both *Brown* and *Wampler* stated that "arguably, if a Chapter 13 petition may be dismissed for lack of good faith, then a motion to convert from Chapter 7 to Chapter 13 may also be denied upon showing of bad faith." *Brown*, 293 B.R. at 871 citing *In re Alt*, 305 F.3d 413 (6th Cir.2002) and *Wampler*, 302 B.R. at 605 citing *In re Love*, 957 F.2d 1350 (7th Cir.1992).

This court goes a step further and adopts a test of "extraordinary circumstances" which does not necessarily require "bad faith" to preclude, *or to condition*, conversion. The Court chooses to follow the review process stated in *In re*

---

12.    *Compare, In re Hansen*, 316 B.R. 505, 507 (Bankr.N.D.Ill.2004) [debtor has an absolute right to convert subject only to statutory limitations]; *In re Carrow*, 315 B.R. 8 (Bankr. N.D.N.Y.2004) [debtor had unfettered right to convert her Chapter 7 case to case under another chapter, provided only that debtor was eligible for relief under that other chapter, and that case had not previously been converted]; *Pequeno v. Schmidt*, 307 B.R. 568 (S.D.Tex.2004) [same] **with** *In re Copper*, 314 B.R. 628 (6th Cir. BAP 2004) [debtor *does not* have one-time, absolute right to convert his Chapter 7 case to one under Chapter 13; *court may deny conversion request on finding* of bad faith]; *In re Marrama*, 313 B.R. 525 (1st Cir. BAP 2004) [Chapter 7 debtor whose bankruptcy case had not previously been converted did not have absolute right to convert case to one under Chapter 13, but only a presumptive right that could be denied for extreme circumstances]; *In re Brown*, 293 B.R. 865, 871 (Bankr.W.D.Mich.2003) [conversion may be denied for lack of good faith]; *In re Wampler*, 302 B.R. 601, 605 (Bankr. S.D.Ind.2003) [by examining the "totality of the circumstances", the court has discretion to deny a § 706(a) motion to convert upon a showing of bad faith or where conversion is sought for an illegitimate purpose].

*Krishnaya,* 263 B.R. 63 (Bankr.S.D.N.Y. 2001), as somewhat elaborated by *Marrama v. Citizens Bank of Massachusetts,* 313 B.R. 525 (1st Cir. BAP 2004). As stated in *Krishnaya:*

> While the caselaw cited above leads this Court to conclude that it has the power to deny conversion, that power, in the Court's view, should be exercised sparingly. Harmonizing the language of the Code with the legislative history quoted above (and caselaw like [*In re*] *Virginia Martin* [880 F.2d 857 (5th Cir.1989))] requires that, while the Court should have the power to protect its jurisdiction from abuse, (footnote omitted) it should regard the right to convert as presumptive, and should deny the right to convert only for lack of statutory qualification or *extreme circumstances.* (emphasis supplied). 263 B.R., at 69.

As stated in *Marrama:*

> There is a split of authority among courts which have considered the issue as to whether the debtor's right to convert a case from Chapter 7 to Chapter 13 pursuant to 11 U.S.C. § 706(a) is "absolute" or subject to some measure of judicial discretion. While some courts and authors have characterized the different positions as the majority view or minority view, the Hon. David S. Kennedy has commented that "[i]t is somewhat difficult to determine at this time in the development of the decisional law which view actually represents the majority or minority of courts, especially considering the fact that conflicting reported opinions substantiating the statutory right as an absolute one or qualified right seemingly appear in almost every new bankruptcy advance sheet." David S. Kennedy, "Current Controversies Centering Around a Debtor's Statutory and Procedural Right to Convert an Originally Filed Chapter 7 Case to a Case under Chapter 11 or 13 of the Bankruptcy Code and Related Matters", *18th Annual Current Developments in Hot & Emerging Areas,* Commercial Law League of America, October 16, 2003 (citing *In re Ponzini,* 277 B.R. 399, 404 n. 3 (Bankr.E.D.Ark.2002) ("[T]his Court's review of recent rulings on this issue reveal a larger number of courts adopting what was previously referred to as the minority view (i.e. the view that a debtor does not have an absolute right to convert under § 706(a)), such that it is no longer clear which is the majority or minority view.")).

> A substantial number of cases, including those from this Panel which have addressed the issue, have held that the right to convert from Chapter 7 to Chapter 13 is absolute only in the absence of extreme circumstances. *See, e.g., Matter of Martin,* 880 F.2d at 859 (courts refuse to interfere with right to convert in absence of extreme circumstances); *Martin v. Cox,* 213 B.R. 571 (E.D.Ark.1996), *aff'd,* 116 F.3d 480 (8th Cir.1997); [*In re*] *Cabral,* 285 B.R. [563] at 575 [(1st Cir. BAP)]. The extreme circumstances approach requires the bankruptcy court to make a factual determination as to the existence of extreme circumstances, such as bad faith, abuse of process, or other gross inequity, and such cases typically involve egregious conduct on the part of the debtor, who is seeking to use the bankruptcy process abusively and selfishly rather than for its intended purpose. Kennedy, *supra,* at 296.

> Other courts look at the totality of the circumstances surrounding the debtor's request to convert his case, balancing the purpose of, and policies underlying, Chapter 13, as well as the debtor's motivation in seeking conversion, and the reasons the debtor did not originally file under Chapter 13. Kennedy, *supra,* at

300 (citing *In re Gallagher*, 283 B.R. 604, 606 (Bankr.M.D.Fla.2002)). This approach is similar to the extreme circumstances approach, and many of the same factors overlap. Such factors may include whether the debtor is seeking to convert in good faith; whether the debtor can propose a confirmable Chapter 13 plan; the impact of denying conversion on the debtor weighed against the prejudice to creditors by allowing conversion; the effect of conversion on the efficient administration of the bankruptcy estate; and whether conversion will further an abuse of the bankruptcy process. Kennedy, *supra*, at 301 (citing [*In re*] *Pakuris*, 262 B.R. 330, 335–36 (Bankr. E.D.Pa.2001)); see also *In re Marcakis*, 254 B.R. 77, 82 (Bankr.E.D.N.Y.2000) (court must consider possibility of abuse, prejudice to other parties or creditors, eligibility of the debtor, and all circumstances generally); *In re Krishnaya*, 263 B.R. 63 (Bankr.S.D.N.Y.2001).

. . .

The Panel concludes that a bankruptcy court may use the totality of the circumstances approach to determine whether the same are extreme and warrant denial of a Chapter 7 debtor's motion to convert to Chapter 13 under § 706(a).[6] The plain language of § 706(a), when read together with other sections of the Bankruptcy Code and Rules[7], does not grant a debtor an absolute right to convert a case from Chapter 7 to Chapter 13; rather, the right to convert is presumptive and should be granted unless there are extreme circumstances showing that the debtor is abusing the jurisdiction of the bankruptcy court. While there is no specific test for determining "extreme circumstances" that constitute bad faith, one important factor is whether a debtor intentionally attempted to conceal assets from creditors. *See Ca-*

*bral*, 285 B.R. at 574–75; *Kuntz*, 233 B.R. at 585.

_____

6. In affirming the "totality of the circumstances" or "extreme circumstances" approach, this Panel rejects the application of § 105 to motions for conversion under § 706. While § 105 empowers the bankruptcy courts with broad equitable and discretionary powers to deal with situations not explicitly covered by the Bankruptcy Code, using § 105 to override the plain language of § 706 has been criticized by courts which hold that § 105(a) should not be used contrary to the clear wording of the Bankruptcy Code, its legislative history, and the Rules of Bankruptcy Procedure. *In re Rashid*, 97 B.R. 610, 615 (W.D.Okla.1989); *Official Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir.1987), *cert. denied*, 485 U.S. 962, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988); *United States v. Sutton*, 786 F.2d 1305, 1307–08 (5th Cir.1986). The First Circuit has stated "section 105(a) does not provide bankruptcy courts with a roving writ, much less a free hand." *Jamo v. Katahdin Federal Credit Union (In re Jamo)*, 283 F.3d 392, 403 (1st Cir.2002) (bankruptcy court lacked power to modify a reaffirmation agreement or compel the parties to enter into a judicially-crafted reaffirmation agreement). *Accord Holyoke Nursing Home, Inc. v. Health Care Fin. Admin. (In re Holyoke Nursing Home, Inc.)*, 372 F.3d 1, 5 (1st Cir.2004) ("[T]he equitable powers of the bankruptcy court do not accord it 'a roving commission to do equity,' nor 'authorize courts to create substantive rights that are otherwise unavailable under the Code.'") (quoting *In re Ludlow Hosp. Soc'y, Inc.*, 124 F.3d 22, 27 (1st Cir.1997)).

7. For example, § 706(a) states that the court "may" convert a case at any time, while § 1307(b) states that the court "shall" dismiss a case upon request of the debtor at any time; "[t]he statute's use of the verb 'may' rather than 'shall' supports the view that the right granted by § 706(a) is presumptive rather than absolute." *Ponzini*, 277 B.R. at 404. Further, several courts have observed that Fed. R. Bankr.P. 1017(f)(2)'s requirements that conversion under § 706(a) be made on motion, filed and served as required by Fed. R. Bankr.P. 9013, along with Fed. R. Bankr.P.2002(a)(4)'s requirement of 20 days' written notice of a hearing on con-

version, indicate that the "right" to convert under § 706(a) is not absolute. *Id.* at 405. 313 B.R. 525, 530–34.

■ The Court thus adopts a test that would preclude or condition a debtor's right to convert from a Chapter 7 case to a Chapter 13 case under 11 U.S.C. § 706(a) only under extraordinary circumstances in which conversion is sought in bad faith, or in which the totality of circumstances on the date of filing the motion for conversion give rise to significant potential prejudice to creditors regardless of any consideration of bad faith.

■ The next issue is whether there exist in this case the "extraordinary circumstances" that provide the Court with the authority to deny or condition Carol's motion to convert her case to a case under Chapter 13.

■ One focus of the Trustee's argument is that Carol has exhibited "bad faith" in the filing of her motion to convert her Chapter 7 case. The Court finds that the record does not support a finding of bad faith. There is no evidence that any assets of the estate were not disclosed, or that Carol committed any evasion or subterfuge with respect to her duties as a debtor. Although as is true with a number of Chapter 13 debtors, Carol's "hope" is to fund her plan on essentially a wing and a prayer and she may not have had on the date of conversion the true ability to meet the criteria of 11 U.S.C. § 1325(a)(6) [13], the issue for review of the conversion motion under 11 U.S.C. § 706(a) does not encompass the issue of ultimate compliance of a plan under the criteria of Chapter 13, including that of 11

U.S.C. § 1325(a)(6)-those issues are determined at the confirmation hearing. With respect to the viability of the debtor to file a potentially confirmable plan for the purposes of review of a § 706(a) motion, the Court will view infeasibility of a proposed Chapter 13 plan to be a factor in "bad faith" analysis only if on the date of the filing of the conversion motion there is no possible set of circumstances which could reasonably exist when the Chapter 13 plan is submitted for confirmation that would allow the court to confirm any plan in the debtor's contemplated Chapter 13 case. The record in this case fails to establish "bad faith" under these criteria. Whether or not Carol can *in fact* confirm a viable Chapter 13 plan based upon the circumstances existing when the conversion motion was filed is not the pertinent issue. A full evidentiary hearing was conducted, and having considered the evidence adduced at that hearing, the Court finds that Carol's actions do not constitute "bad faith" in the context of the potential for confirmation of her proposed Chapter 13 plan.

The Trustee also advances the theory that Carol's request for conversion itself is motivated by "bad faith", because by requesting conversion, she is seeking to avoid the Trustee's administration of her residence, held in tenancy by the entireties with her husband, for the benefit of the couple's joint creditors, under the principles of *In re Cross, supra.* The Trustee correctly notes that Carol's proposed plan pays a $0.00 dividend to unsecured joint creditors. There is nothing connoting bad faith about this. If Jess' exemption claim

---

**13.** The net monthly funds available for funding payments to be made to the Chapter 13 trustee, as computed on the basis of her amended Schedules I and J, fall far short of the monthly payment to the trustee her plan proposes. At the evidentiary hearing, Carol testified that she could make up the short fault with part-time employment—maybe she can and maybe she can't, but she might by the time the plan is submitted to the Court for confirmation review.

were held to have been under I.C. 34–55–10–2(b)(5)—which won't be so held, but which was an open question when Carol filed her conversion motion—there would be no joint creditors in this case to even consider in any context, because Jess' discharge in his case eliminated his *in personam* liability to those creditors prior to the filing of Carol's case, and thus there are no "joint" creditor's in Carol's case. As the Trustee acknowledges, absent the challenge to the scope of the exemption claimed by Jess in his case with respect to the couple's tenancy by the entireties property, he would have no grounds to oppose Carol's requested conversion. The exemption claimed in Jess' case is ambiguous, and given that fact, if that exemption had been sustainable under I.C. 34–55–10–2(b)(5), the sequence of events undertaken in Carol's case is not only not in bad faith, but rather is exactly what a competent counsel would do for a client in Carol's case—exactly what is invited by pre-*Cross* law in this District. The Court finds that Carol's request to convert her Chapter 7 case to a case under Chapter 13 does not constitute "bad faith" in the context of seeking to evade administration of an asset in her Chapter 7 case.

· The foregoing findings that Carol has not exhibited "bad faith" don't end this contested matter, however. The issue now becomes whether there are "extraordinary circumstances" under the totality of circumstances of this case which give rise to the Court's authority to deny or to condition the conversion requested by Carol.

· ▇▇▇ First, the Trustee's scenario, it must be recalled, requires the reopening of Jess' Chapter 7 case. This is not a done deal: the motion to reopen is subject to challenge and court review with respect to

a fully administered, closed Chapter 7 case; *See,* e.g., *In re Arboleda,* 224 B.R. 640 (Bankr.N.D.Ill.1998); *In re Haralambous,* 257 B.R. 697 (Bankr.Conn.2001); *In re Ozer,* 208 B.R. 630 (Bankr.E.D.N.Y. 1997).[14] The fact that the issue of reopening Jess' Chapter 7 case exists puts a hurdle in the Trustee's path *under the Trustee's theory* which must be taken into account in measuring the totality of circumstances to be reviewed with respect to Carol's conversion motion.

There is a more concrete circumstance. Given that Jess' exemption is going to be limited to his $7,500.00 exemption for residential real estate, if Jess' case were reopened, by the Court's analysis there would be no need to consolidate Carol's case with Jess'. Jess' creditors and Carol's creditors are essentially identical, and Jess' and Carol's interests in the subject real property can both be sold pursuant to 11 U.S.C. § 363(h) in Jess' case and the proceeds of Jess' interest then used to pay Jess' creditors, which is the same thing as paying Carol's and Jess' joint creditors.

Thus, if Jess' case is *not* reopened, absent some form of sustainable objection to Carol's exemption of the subject real property under I.C. 34–55–10–2(b)(5) as claimed in her *amended* Schedule C, there is no property to administer for joint creditors, which would eviscerate the reason the Trustee objected to Carol's conversion motion in the first place. If Jess' case is reopened and his interest in the property, along with Carol's interest, is sold under 11 U.S.C. § 363(h), the proceeds from Jess' interest—which interest will probably be measured from the date of the filing of Jess' Chapter 7 case, regardless of what has happened between Carol and Jess in

---

**14.** As is true with other matters concerning Jess' Chapter 7 case, the issue of whether that case can be reopened for the purpose for

which the Trustee might seek to do so is not before the Court in This contested matter.

relation to the property since then—will almost certainly pay all joint creditors, depending upon the valuation of Jess' interest. If those proceeds are insufficient for that purpose, Carol—assuming, but without in any manner deciding, that her I.C. 34–55–10–2(b)(5) exemption is sustained—will have won a battle but will have lost the war: the proceeds from her interest will be exempt, but she will have lost the house. In short, the Court may have missed something in this convoluted conundrum of complex circumstances—and if it did the parties have mechanisms to address the miss—but the Court does not perceive any realizable advantage for Carol's and Jess' creditors by denying Carol's motion to convert, and creating the potential for consolidating her case with Jess', with the sole possible exception that if the cases were ultimately consolidated, an objection to Carol's I.C. 34–55–10–2(b)(5) exemption could then perhaps be based on *In re Cross, supra,* to cover the possibility that the sale of Jess' interest would not provide sufficient proceeds to pay the joint creditors. The Court does not view this circumstance to constitute the type of "extraordinary" circumstance upon which a conversion from Chapter 7 to Chapter 13 requested under 11 U.S.C. § 706(a) should be either conditioned or denied.

Based upon the analysis stated above, the Court finds that the Trustee' objection to Carol's motion to convert her case from a case under Chapter 7 to a case under Chapter 13 should be DENIED.

**IT IS ORDERED** that the Trustee's objection to Carol's motion to convert her case from a case under Chapter 7 to a case under Chapter 13 is DENIED.

**IT IS FURTHER ORDERED** that Carol's motion to convert her case from a case under Chapter 7 to a case under Chapter 13 is GRANTED. A standard conversion order will be entered.